BOARD OF COM'RS OF SILVER BOW COUNTY, respondent, *v.* DAVIS, appellant.

TAXATION — *National bank stock taxable in territories — Revised Statutes United States, section 5219.* — Revised Statutes United States, section 5219, providing that shares of any national banking association may be taxed as other personal property in the state in which such association is located, and the taxation thereof may be regulated by the legislature of such state subject to the restriction that the taxation shall not be at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of such state, extends and applies to territories as well as states, and the shares of national banks in Montana are taxable as other personal property.

SAME — *Equalization — National bank stock and mines — Laws Montana, twelfth session, page 67 — Revised Statutes Montana, section 1015.* In an action to recover taxes upon certain shares of national bank

stock it appeared, upon an agreed statement of facts, that by Laws Montana, twelfth session, page 67, stocks or shares in any bank or company, incorporated or otherwise, are subject to taxation, except that where the entire capital stock of any incorporated company shall be invested in assessable property in the territory of Montana, such stock shall not be taxed; that in the county suing, shares of stock in corporations whose entire capital stock was invested in assessable property in the territory were not taxed; that mining claims not patented were not assessed or taxed at all, and where patented, were assessed at the government price of $5 per acre without regard to their market value; that there were a large number of mining corporations whose entire capital stock was invested in assessable property; and that part of said property consisted of mining claims; that defendant's shares of bank stock were taxed at the market value. *Held,* such statement did not show such a discrimination against defendant in the taxation of his bank shares as brought the case within the restriction imposed by Revised Statutes United States, section 5219; and that shares of bank stock and of capital invested in mines being different classes of property, where the rate of taxation in each case is the same upon the amount assessed, " discrimination " will not apply between them.

*Appeal from Second District, Silver Bow County.*

ACTION to recover taxes.  Judgment for plaintiff.  Defendant appeals.

KNOWLES & FORBIS, for the appellant.

W. W. DIXON, for the respondent.

WADE, C. J.  This is an action by the plaintiff and respondent to recover the sum of $1,562.75 from the defendant and appellant for taxes levied for the year 1885 upon certain shares of the capital stock of the First National Bank of Butte, owned by the appellant.  The cause was tried upon the following agreed statement of facts:

"(1) That the First National Bank of Butte is now, and was during all of the year 1885, and before that time, a corporation duly created under and by virtue of the laws of the United States relating to national banks, and located and carrying on a general banking business in Butte City, in the county of Silver Bow and territory of Montana, and

that the capital stock of said bank is $100,000, divided into shares of $100 each.

" (2) That, during all of said year 1885, the said defendant, Andrew J. Davis, was the owner and holder of nine hundred and forty shares of the capital stock of said bank, and that said shares were, during all of said year, and are now, of the true value in money at private sale, and of the market value (which is the same), of $125 each.

" (3) That, for and in the said year 1885, there was duly levied and assessed, according to the laws of Montana territory, in said Silver Bow county, for territorial, county, and other purposes, upon all property in said county subject to taxation an *ad valorem* tax, amounting in all to thirteen and three-tenths mills on each dollar of assessed valuation.

" (4) That said nine hundred and forty shares of stock of the said First National Bank of Butte were assessed for taxation in the manner provided by the laws of said Montana territory for the said year 1885, to said defendant, Andrew J. Davis (who then owned and held said shares in said county of Silver Bow), at their estimated true value in money at private sale, and at their market value (which is the same).

" (5) That the said defendant has not, nor has said bank, or any one for him or it, ever paid said tax on said shares so assessed as aforesaid, or any part of said tax.

" (6) That, in the general assessment of said Silver Bow county for said year 1885, shares of stock in corporations generally were assessed in accordance with the provisions of section 1003 of chapter 53 of the fifth division of the Revised Statutes of Montana territory, as amended by the act of the legislative assembly of February 22, 1881, on page 67 of the Laws of 1881; and, where the entire capital stock of any incorporated company was invested in assessable property in said territory, such stock, or the shares thereof, were not taxed, and that mining claims not held under patent from the United States were not assessed or taxed at all, and, where held under patent from the United States, were assessed at the government price of $5 per

acre, without regard to their true market value; that there are a large number of mining corporations in Montana territory whose entire capital stock is invested in assessable property, and that part of said property consists of mining claims."

There was a judgment for the plaintiff for the amount claimed, from which the defendant appeals, and asks for a reversal of the judgment, for the reasons, viz.: *First*, that, under the provisions of the general banking act, shares of stock in national banks in the *territories* are exempt from taxation; and, *second*, that by the laws of Montana, and by the showing of the agreed statement of facts, there has been an unjust discrimination against the appellant in the taxation of his shares of national bank stock. Both of these questions arise under the following section of the national banking act:

"Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes to the same extent, according to its value, as any other real property is taxed." R. S. Mont. § 1015.

1. The proposition of the appellant is that, by virtue of this section, the right to tax national bank shares is limited to national banks located and doing business in a *state*, and

that such shares are not subject to taxation in a *territory.* In construing this section, reference must be had to all the sections, and to the general scope and meaning of the act of congress authorizing and establishing our national banking system. The sections or different parts of every statute must be construed together, and as they are modified by one another. If the object and intent of a statute is distinctly defined and clearly expressed, ordinary words will be given such a meaning, if they have such a meaning, as to make them harmonize with such object and intent, even though they might be so interpreted as to be in conflict therewith. The word "state" has various meanings. It may mean a place; it may mean an organized political community. If used in the latter sense, the word might mean the same as territory, for that is also an organized political community.

The general scope and purpose of this act of congress was to give to the people of the United States, whether they lived in a state or in a territory, a uniform system of banking, whereby they should be authorized to form associations for carrying on that business. It requires such associations in their certificates to name the place where its operations of discount and deposit are to be carried on, designating the *state, territory,* or district, and the particular county, city, town or village. Section 5134. Here the words "state, territory, or district," mean simply the place — the locality — in which the business is to be carried on.

The right to form such associations is made a privilege, — a franchise, — which is distributed equally among the people of the *states* and *territories,* according to the population of either (see sections 5178–5180); and every association is allowed to charge and to receive interest at the rate allowed by the laws of any state, *territory,* or district where the bank is located (section 5197). Penalties for the violation of any of the provisions of the act, by the officers of *any* banking association, are the same, whether such violation occurs in a state or territory. Section 5239.

The banking system created and established by the act extends alike to the states and territories. The constitution and laws of the United States, which are not locally inapplicable, have the same force and effect in the territories as elsewhere within the United States. R. S. U. S. § 1891. The territories are as much a part of the United States as are the states. There is but one banking system for all. No provisions of the banking act are locally inapplicable to the territories. The legislative powers of the territories extend to all rightful subjects of legislation. It is just as competent for a territorial legislature to determine and to direct the manner and the place of taxing personal property as it is for a state legislature to do the same thing. In this respect their powers are alike. Either may levy and assess taxes upon property subject to taxation within its jurisdiction. Each must raise a revenue by taxation for carrying on the local government. The national banking system extending over each alike, it would seem that the words of section 5219, "in assessing taxes imposed by authority of the state within which the association is located," ought to be interpreted to mean the legislative authority, or the authority within the locality in which the banking association is situated that may rightfully and legally levy and assess taxes upon personal property. Otherwise burdens are imposed upon banking associations in the states, and exemptions are allowed to those in the territories, which would be inconsistent with the whole spirit of the act, which was designed to give a uniform system to every locality. If this interpretation of the word "state" be correct, then there are no restrictive words in section 5219, which is a part of chapter 3 of the act, and is controlled by section 5157, which provides that chapters 2, 3 and 4, which are expressed without restrictive words, as applying to "national banking associations," or to "associations," apply to all associations organized to carry on the business of banking under any act of congress. If this interpretation is not correct, then, by virtue of the

same section, the real estate of any banking association in a territory is exempt from taxation, and by virtue of section 5242, attachments and injunctions may issue against banking associations before final judgment, if located in a territory. And so, if the word "state" means one of the United States, and not the place in which the banking association is located, then, while the comptroller of the currency, by virtue of section 5181, is given authority to equalize the currency in a state according to the population, he has no such power in the territories.

These incongruities are avoided, and the act made consistent and harmonious, by giving to it a uniform operation in the states and territories, which can be done without violating any of its words or phrases, and which was the evident purpose of congress when it provided a banking system for the people of the United States.

2. The second proposition is that, by the laws of Montana, and by the showing of the agreed statement of facts, there has been an unjust discrimination against the appellant in the taxation of his shares of national bank stock. The statute of the territory concerning property subject to taxation provides, among other things, for the taxation of " stocks or shares in any bank or company, incorporated or otherwise, and whether by any other state or territory, and whether situated in this territory or not, except that, where the entire capital stock of any incorporated company shall be invested in assessable property in the territory of Montana, such stock shall not be taxed." 12 Sess. Laws, p. 67.

The sixth finding of fact is, in substance, that in the year 1885, in Silver Bow county, shares of stock in corporations generally were assessed in accordance with the provisions of the foregoing statute; and, where the entire capital stock of any incorporated company was invested in assessable property in the territory, such stock, or the shares thereof, were not taxed, and that mining claims not held under patent from the United States were not assessed or taxed at all, and, where held under patent, were assessed

at the government price of $5 per acre, without regard to the market value; that there are a large number of mining corporations whose entire capital stock is invested in assessable property; and that part of said property consists of mining claims. It is also found as a fact that nine hundred and forty shares of stock in the First National Bank of Butte, in said county, were assessed and taxed, for the year 1885, at the market value, and at the same rates as other property in said county.

Shares in corporations represent the capital stock. If the capital stock is taxed, the shares ought not to be; and, if the shares are taxed, the capital stock ought to be exempt. If both are taxed, there would be double taxation. To prevent this the legislature provided that, if the entire capital stock was in the territory and assessable, the shares should be exempt. The converse of this would be true, that, if the capital stock were not assessable, the shares would be subject to taxation. If the capital stock was not within the territory, and therefore not assessable, or if it was exempt from taxation by law, the result would be the same, and the shares would be subject to taxation. National bank shares are taxable, but the right to tax them is subject to the condition that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens. Sec. 5219, R. S. U. S.

How is other moneyed capital in the territory taxed? This is the first thing to be determined in order to ascertain if the taxation of bank shares is an unjust discrimination. The agreed statement of facts shows that there are a large number of mining corporations in the territory whose entire capital stock is invested in assessable property, and that part of said property consists of mining claims, assessed for taxation at the rate of $5 per acre, without regard to market value. The capital stock being assessable, and subject to taxation, the shares, which merely represent such capital stock, are, and ought to be, exempt. Otherwise the same property would be taxed twice for the same year.

But if, for any reason, the capital stock of these corporations could not be reached for taxation, then the shares would become assessable, under the statute of the territory. National bank stock is in that condition. It is not subject to taxation. It is represented by government bonds, which are exempt, and hence bank shares become assessable the same as the shares in other corporations whose capital stock is not invested in the territory; and, in order to show an unjust discrimination against bank shares, it would be necessary to show that the taxation of such shares resulted in a higher or greater tax upon the money invested than results in the taxation of the capital stock of those corporations whose capital stock is assessable in the territory. It is immaterial whether the taxation is upon the shares or upon the capital stock, if the tax upon the money invested is equal.

Mining claims are real estate, and it is legal for national banks to purchase and to hold such claims. If other corporations invest in such claims, and they are taxed at the rate of $5 per acre, without regard to the market value, there is no unjust discrimination against national banks, unless the mining claims which they may own are taxed at a higher rate. Nothing of this kind appears in the agreed statement of facts.

It is said, in appellant's argument, that it may be safely asserted that no corporation formed under the laws of Montana, and doing business in the territory, but has its entire capital stock invested in assessable property in the territory, and that the shares of stock in such corporations are exempt from taxation. Taking this statement to be true, it simply shows that the capital stock is taxed instead of the shares, but does not touch the proposition that the shares ought to be exempt where the capital stock is not taxed. Suppose the capital stock is not in the territory or assessable here,—and that is the case in hand,—the fact that the shares in other corporations whose capital stock is assessable in the territory are exempt from taxation has no

bearing on the question. The inquiry is as to an unjust discrimination against bank shares. If money is invested in such shares and taxed at the same rate as money invested in mining or other corporations, then there can be no just cause of complaint because in one case the money is taxed as shares, and in the other as capital stock. There is no discrimination against a bank where its capital stock is taxed in the form of shares, and in favor of other corporations whose shares are exempt, but whose capital stock is taxed. In either case the moneyed capital of the corporation is taxed, and it does not make much difference by what name it is called. It would be an unjust discrimination in favor of national banks not to tax their shares (their capital stock being exempt), while at the same time subjecting to taxation the capital stock of other corporations whose entire capital stock is invested in assessable property in the territory. Shares in national banks are taxable, even though the entire capital stock is invested in United States bonds, which are exempt from taxation. *Van Allen* v. *Assessors*, 3 Wall. 573; *People* v. *Commissioners*, 4 Wall. 244. It is not shown that the entire capital stock of the bank of the appellant, or that any part of such stock, is invested in assessable property in Montana, whereby its shares of stock become exempt.

The board of commissioners of each county sits as a board of equalization to hear complaints and to adjust and to equalize taxation, but it is not shown that the bank or the appellant ever appeared before such board to have the assessment on these shares reduced or remitted, or to show that there was a discrimination against the bank in assessing these shares. If it had been shown there, or here in the agreed statement of facts, that the capital stock of the bank was invested in assessable property in the territory, or that it owned property in the territory which had been assessed at a higher rate than that of similar property belonging to other corporations in the territory, or that such deductions had not been made as had been allowed to such

other corporations, then there would have been just cause
of complaint. If there were no deductions to be made
from the amount of the tax, the tax would be legal, even
though the statute prohibited the making of authorized law-
ful deductions. The denial of a right is no injury to him
who has no right to enforce.

Says Justice Miller in *Supervisors* v. *Stanley*, 105 U. S.
311: "What is there to render it [the statute of New York]
void as to a shareholder in a national bank who owes no
debts which he can deduct from the assessed value of his
shares? The denial of this right does not affect him. He
pays the same amount of tax that he would if the law gave
the right of deduction. He would be in no better condition
if the law expressly authorized him to make the deduction.
What interest has he in a question that only affects others?
Why should he invoke the protection of the act of congress
in a case where he has no rights to protect?"

The statute of the territory is not invalid because it sub-
jects bank shares to taxation, and exempts the shares of
other corporations. In order to affect its validity, it would
be necessary to show that there is an unjust discrimination
in the amount of the tax upon the money invested in bank
shares, and money invested in the shares of other corpora-
tions in the territory; and this cannot be shown while it
appears that in one case the money is taxed at equal rates,
as shares, and in the other as capital stock invested in the
territory.

The appellant has no legal interest in the question as to
how money invested in other corporations in the territory is
taxed, unless he can show that his money, invested in bank
shares, is taxed at a greater rate; thereby making an un-
equal discrimination against his investment. Such discrim-
ination does not appear, for the following reasons: (1) It is
not shown that the bank has any of its capital stock in-
vested in assessable property in Montana. (2) It is not
shown that it is the owner of any mining claims, taxed at
a greater rate than the mining claims of other corporations

in the territory. (3) It is not shown that any deductions were denied in taxing the bank shares that were allowed to other corporations in the territory. (4) It is not shown but what the taxation of bank shares is just equivalent to the taxation of other corporations whose entire capital stock is invested in assessable property in the territory. (5) It does not appear that money invested in bank shares is subjected to any higher or greater rate of taxation than any other moneyed capital invested in the territory. (6) On the contrary, it does appear that, if the entire capital stock is assessable in the territory, the shares which represent such stock ought to be exempt, and that, if the capital stock is exempt for any reason, the shares, in order that there may be no discrimination in their favor, ought to be taxed. (7) If money invested in a national banking association, or other corporation, is taxed at the same rates as other property, it is immaterial whether the tax is levied upon the shares which represent the capital stock, or upon the capital stock itself. In either case the same result is arrived at, and the money invested is subject to the same and equal taxation. (8) The right to form banking associations being a privilege of great value, by means of which large profits are earned for the shareholders, this right or privilege is property, and the shares become subject to taxation, though the capital stock is exempt; and so a banking association has the same relation to the statute of the territory as would any other corporation whose capital stock was not invested in assessable property in the territory, in which case the shares would be subject to taxation.

The judgment is affirmed, with costs.

McLEARY, J., and BACH, J., concur.