# ROSS

*v.*

# THE UNITED STATES, ex rel. THE PROSPECT HILL CEMETERY.

CONDEMNATION OF LAND; STATUTORY CONSTRUCTION; CONSTITU-
TIONAL LAW; MANDAMUS.

By the act of Congress of December 21, 1893, the Commissioners of
this District were directed to open and grade a certain highway,
and to condemn certain lands necessary for its extension, and
sufficient money to pay any judgment of condemnation was ap-
propriated. Condemnation proceedings were instituted and an
award made to the owners of the land was ratified by the lower
court. Pending an appeal from the order of ratification, Con-
gress passed the act of August 7, 1894, directing that court to
vacate such order, and directing the Commissioners to proceed
to carry into effect the former act by acquiring title to the land
by condemnation under ch. 11, R. S. D. C. On the appeal the
order of the lower court was affirmed with certain modifications.
The Commissioners took no further steps to acquire the land and
claimed to have abandoned the purpose of taking the land con-
demned. Thereupon one of the land owners applied for a writ of
*mandamus* to compel the Commissioners to pay the award and
take the land, and on an appeal from an order directing the issu-
ance of the writ as prayed it was *held* reversing such order—

(1) That the provision of the act of August 7, 1894, directing the lower
court to vacate its order confirming the award theretofore made,
was void on its face as an unconstitutional invasion by Congress
of judicial power, and also because of the fact that at the time,
the cause had passed by appeal out of the cognizance of the
lower court; *following* District of Columbia *v.* Cemetery, 5 App.
D. C. 497 ; but—

(2) That the second provision of that act constituted a valid repeal of
the mandatory clauses of the act of Dec. 21, 1893, a refusal by
Congress to take the land at its adjudicated value, and a with-
drawal from the enterprise of obtaining the land by condem-
nation.

No. 525.  Submitted January 8, 1896.  Decided February 4, 1896.

HEARING on an appeal by the Commissioners of the Dis-
trict of Columbia from an order directing the issue of a

peremptory writ of *mandamus* to compel them to take the necessary steps to pay an award in condemnation proceedings. *Reversed.*

The COURT in its opinion stated the case as follows :

This is an appeal from an order of the Supreme Court of the District of Columbia directing the issue of a peremptory writ of *mandamus* to the Commissioners of the District.

On December 21, 1893, an act of Congress to the following effect was approved :

"*Be it enacted*, *&c.*, That the Commissioners of the District of Columbia are hereby directed to open and grade North Capitol street from T street to the Soldiers' Home, and are hereby authorized and directed to condemn in the manner provided by law prior to March 2, 1893, for the condemnation of land in the District of Columbia, such of the lands of the Prospect Hill Cemetery and of Annie E. Barbour as may be necessary for the extension of said street, and the amount of money necessary to pay the judgment of condemnation and the cost of grading is hereby appropriated out of any moneys of the District of Columbia in the Treasury not otherwise appropriated, to carry out the provisions of this act ; but the cost of grading shall not exceed $10,000 : *Provided,* That the said sum shall be paid out of the revenues of the District of Columbia : *And provided further*, That this appropriation shall be immediately available." 28 Stat. p. 20.

In pursuance of this act, the Commissioners of the District of Columbia instituted in the Supreme Court of the District of Columbia, sitting as a District Court of the United States, proceedings for the condemnation of the land specified in the act ; and that court appointed three commissioners to view the land, take testimony respecting its value, appraise the same, and return their appraisement to the court. These commissioners reported to the court

that they found the value of the land required to be taken for the street to be $45,724, and the damage to the residue of the land by the taking of this portion to be $5,962. Exceptions to this appraisement were filed on behalf of the Commissioners of the District of Columbia ; but the court overruled them, and ratified and confirmed the report. Thereupon the Commissioners of the District appealed to this court.

Pending this appeal, the appropriation act of August 7, 1894, 28 Stat. 243, 251, for the government of the District of Columbia for the fiscal year ending June 30, 1895, was passed, and in a clause of that appropriation act there was a provision, undoubtedly inserted through inadvertence and without much consideration, to the following effect :

" That the Supreme Court of the District of Columbia is hereby directed to vacate its order confirming the report of the commissioners appointed to appraise the value of the lands of the Prospect Hill Cemetery and Annie E. Barbour, proposed to be taken for the extension of North Capitol street, under the act approved December 21, 1893, entitled an act to extend North Capitol street to the Soldiers' Home ; and the Commissioners of the District of Columbia are hereby directed to proceed to carry into effect said act, and to acquire the title by condemnation, according to chapter 11 of the Revised Statutes of the United States relating to the District of Columbia, in regard to public highways, roads and bridges.

" That section three of the act approved August 30, 1890 (26 Stat. 412), entitled 'An act making appropriations for sundry civil expenses of the Government for the year ending June 30, 1891, and for other purposes,' shall not be construed to apply to the condemnation of land for public highways nor to repeal chapter 11 of the Revised Statutes of the United States, relating to the District of Columbia, in regard to public highways and roads and bridges."

Thereupon, on August 13, 1894, a motion was filed in the Supreme Court of the District on behalf of the Com-

missioners of the District of Columbia requesting that court, in pursuance of the act of Congress last cited, to vacate its order of confirmation of the report of the commissioners for the valuation of the land. But the motion was overruled ; and from the order overruling the motion, appeal was taken to this Court on behalf of the Commissioners of the District of Columbia.

The two appeals thus taken by the Commissioners of the District were heard together in this Court, with the result that we affirmed the decision of the court below in both the matters appealed from, with the modification that the Prospect Hill Cemetery, besides the sum of $45,724 allowed by that court as the value of the lands proposed to be actually taken for the street, we also held that the cemetery company was entitled to the amount of $5,962 reported as the amount of the damage that by the taking would result to the remaining property. The decision is reported in 5 App. D. C. 497, and was rendered on March 4, 1895.

The Commissioners of the District of Columbia seem to have taken no further proceedings in the premises ; and it is claimed on their behalf that they have abandoned the purpose of taking the land condemned or sought to be condemned. At all events, they have not undertaken to take possession of it, or to take any new steps for the purpose of its condemnation ; and the possession of the cemetery company has not been further disturbed.

In this condition of things the cemetery company, on October 5, 1895, instituted the present proceedings by filing in the Supreme Court of the District of Columbia, a petition for a *mandamus* to compel the Commissioners of the District to pay the amount thus adjudicated to be the value of the land and damages, $51,686. In the petition the foregoing facts are stated, and reference is also made therein to certain other legal proceedings by other parties in interest. It is alleged that the law is mandatory in its direction to the Commissioners to open up North Capitol street, and

to pay to the petitioner the sum mentioned as the value of
its property; and that by their illegal delay they are injur-
ing the petitioner and preventing the sale of lots in the
cemetery.

Upon the issue of a rule to show cause, the Commission-
ers filed their answer, admitting all the facts recited in the
petition, but denying the allegations that they were under
any obligation to open the street in question, or to pay to
the petitioner the amount adjudged to be the value of its
land, which they claim to be grossly excessive.   They
averred that, on account of the enormous amount of the
damages, they had abandoned the purpose of opening
North Capitol street; and they denied that the petitioner,
which was still in undisturbed possession of the property,
was in any way injured, or was prevented from making use
of the property for the purposes for which it was intended.

Upon the petition and the answer, the court below was
of the opinion that a peremptory writ of *mandamus* should
issue to the Commissioners directing them to take the
necessary steps to pay the amount of $51,686, awarded to
the petitioner, and made its order accordingly.   From this
order the Commissioners have appealed to this court.

*Mr. Sidney T. Thomas*, Attorney for the District of
Columbia, and *Mr. Andrew B. Duvall*, Assistant Attorney,
for the appellant.

*Mr. Henry Wise Garnett* and *Mr. Wm. F. Mattingly* for
the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

The theory of the appellee in this case is that, under the
act of Congress of December 21, 1893, it is mandatory
upon the Commissioners of the District of Columbia to
open North Capitol street through the land of the appellee,
and to pay the appellee therefor the amount of money found
by the inquisition heretofore had in the case to be its proper

value ; and that the subsequent act of August 7, 1894, is void for all purposes, and therefore does not affect the mandatory character of the previous enactment. On the other hand, the claim of the appellants is that, by the act of August 7, 1894, Congress abandoned the proceedings to acquire the land in question ; and that the Commissioners, also, in view of the enormous damages awarded, have abandoned all purpose to open North Capitol street through the land of the relator.

Undoubtedly the act of December 21, 1893, is most mandatory in its character and imperative in its terms ; and under it the Commissioners are left no discretion in regard to the opening of North Capitol street. Under that act it would be beyond all controversy their duty to take the land in question under the condemnation proceedings instituted by them for the purpose of its acquisition, to pay the amount awarded as its value, and to open and grade the street. But the question is whether the act of August 7, 1894, has had the effect to alter or modify their rights and duties in that regard, notwithstanding that in the former proceedings it was held to be ineffectual to affect those proceedings.

It is quite evident that, in the enactment of the somewhat peculiar and extraordinary provisions of the act of August 7, 1894, Congress intended to prohibit the Commissioners of the District of Columbia from taking the land sought to be acquired for the opening of North Capitol street, under the appraisement of that land which had then been made ; that it was dissatisfied with the amount of that appraisement ; and that it directed recourse to another proceeding with the view of procuring an appraisement for a smaller amount. Congress did not express its dissatisfaction or avow its purpose in terms ; but that is the necessary inference to be drawn from its action. Its enactment, we must suppose, was most unwisely and improvidently drawn by some one who gave but little thought to it, and was undoubtedly passed without consideration ; and in our former opinion, when its provisions were pressed upon our atten-

tion, we were compelled to disregard them, as the court below had done.  Both of the leading provisions were a plain invasion and violation of constitutional right, so far as they sought to direct the judiciary in the judgment which it should render, and so far as they sought to direct a read-judication of that which had already been adjudicated according to law.

But does it necessarily follow from this that the act, or rather the special provisions cited from the act, are utterly null and void for all purposes?  We are not disposed to think so.  If the act had recited the dissatisfaction of Congress with the amount of the award, and that on account of the excessive character of that award the Commissioners should not acquiesce in it and should take no further action under those condemnation proceedings ; and if, after such recital, the act had gone on to make the provisions which it actually did make, avowing its purpose to acquire the land in some other way, and directing the Commissioners to proceed in such other way, it could scarcely be contended with reason that, although the positive directions of the enactment should be regarded as null and void, yet the express avowal of dissatisfaction with the award and the order to the Commissioners to take no further action under those proceedings would not be effectual as a refusal on the part of Congress to take the land under the award, and as a withdrawal of its appropriation of money for the purpose of the acquisition.  And if this would be the result of an expression of opinion and purpose by Congress, we do not see that the conclusion should be different, when the opinion and purpose are indicated with almost equal clearness by necessary implication.

Congress undoubtedly had the right to withdraw from the proceedings for condemnation at any time.  It had the right, after the ratification of the award, to take the property for the amount of the appraisement, or to refuse to take it.  As we stated in our former opinion, the adjudication in the condemnation proceedings simply amounted to

this—" that if the public authorities elected to take the land in question which, so far as the owners were concerned, they were still free to take or not, as they should think proper, they should be entitled to do so upon the payment therefor to such owners of the value which was adjudged to be their just compensation." The adjudication, therefore, did not transfer the property to the public ; and Congress was under no obligation from that adjudication alone to take it. Nor by that adjudication were the Commissioners of the District of Columbia required to take it. Whatever obligation was upon the Commissioners was from the previous enactment ; and if Congress has withdrawn that obligation the Commissioners are no longer bound. Under ordinary circumstances, a mere appraisement does not bind any one to any subsequent action. Refusal to be bound by it, or to act under it need not be expressed in words ; it may be evidenced by mere inaction.

Assuming that, in view of the mandatory character of the act of December 21, 1893, the Commissioners of the District of Columbia would have been bound to proceed, if that act stood alone, and that silence or inaction thereafter on the part of Congress would not have relieved them from the duty of accepting the award and taking the land ; yet, if Congress has virtually repealed that act in that regard, has withdrawn its authority to the Commissioners to act thereunder in the manner therein specified, and has directed them to proceed in another and entirely inconsistent way, we are unable to see why this subsequent action, ineffectual though it be to affect the rights of the owners of the land, should not be construed as a valid revocation of the authority previously granted to the Commissioners, which it was certainly intended to be.

Now, undoubtedly, the act of August 7, 1894, is, to a certain extent, a repeal of the act of December 21, 1893. It is very true that in the act of later date Congress specifically directs the Commissioners to carry the previous act into effect, and avows its continued purpose to acquire

the land which it was sought by that act to acquire; but the mode of procedure first prescribed to the Commissioners is repealed, for the reason that they are now directed to pursue a mode wholly inconsistent therewith, and the appropriation made by the first act is repealed, because that appropriation was to pay the judgment of condemnation in the proceedings then directed to be instituted, and Congress, by its order to vacate that judgment, necessarily refuses to be bound by it or to allow the appropriation to be applied to its satisfaction.

It has been repeatedly held that a statute void in part is not necessarily void *in toto;* and that if the valid provisions in such a statute can be separated from those that are invalid or unconstitutional, only the latter are to be disregarded. *Albany Co. v. Stanley,* 105 U. S. 305 ; *Baldwin v. Franks,* 120 U. S. 678 ; *Field v. Clark,* 143 U. S. 649. And it has also been held that, when a statute is valid as to its general or proper application, but void as to some particular application of its provisions, it will be held void only in the particular application sought to be made of it. *Poindexter v. Greenhow,* 114 U. S. 270.

It is true that it has also been held that limitation of unconstitutionality by construction, not by separation of provisions, cannot be resorted to. *Baldwin v. Franks,* 120 U. S. 678 ; *Poindexter v. Greenhow,* 114 U. S. 270 ; *Trademark Cases,* 100 U. S. 82 ; *United States v. Reese,* 92 U. S. 214. But it was pointed out in the case of *Albany County v. Stanley,* 105 U. S. 305, by Mr. Justice MILLER, speaking for the Supreme Court of the United States, that a statute might be held void in some cases and valid in others, void where extraneous circumstances showed a conflict between it and the higher or organic law, valid where the circumstances developed no such conflict.

The act of August 7, 1894, is easily divisible into two parts, which have no necessary connection with each other : 1st. The direction to the Supreme Court of the District of Columbia to vacate the order entered by it ; 2d. The direc-

tion to the Commissioners of the District to carry into effect the previous enactment of December 21, 1893, in another and a different mode from that provided in that enactment. The first of these provisions may be regarded as void on its face, inasmuch as it was a plain invasion by Congress of judicial power which was not granted to it by the Constitution; although it was invalid also for an extraneous reason, the fact that at that time the cause had passed by appeal out of the cognizance of the Supreme Court of the District of Columbia.

But the second provision is not void on its face. There is no apparent liability of objection to it on the ground of unconstitutionality. On the contrary, on its face it is an entirely legitimate exercise of the power vested in Congress by the Constitution; and if it had been enacted at any time before the final adjudication by the Supreme Court of the District of Columbia in the condemnation proceedings, it would seem to be clear that it would be effective to all intents and purposes. Had it been passed before that adjudication, it would have been the duty, as well as the right of the Commissioners of the District to dismiss the proceedings theretofore instituted by them for condemnation, and to institute proceedings under the new law; and there could have been no valid legal objection to their adoption of such a course. It was only when the rights and liabilities of the parties became fixed by the adjudication of value, that it became incompetent thereafter for the Commissioners to seek to readjudicate the question that had been determined in that proceeding, or for Congress to direct any such readjudication. Only, therefore, when we look to extraneous circumstances and the special application of the act, do we find it ineffectual. It cannot strictly be called void; it is simply ineffective and impracticable—incapable of being enforced, because the subject-matter upon which it was intended to operate and upon which it could well have operated at an earlier stage, had passed beyond the sphere of legislative control.

The act, therefore, not being in itself void, should be given all the effect which it can legitimately have ; and included in that, undoubtedly, is the implied repeal of the power given to the Commissioners to proceed under the previous enactment, and the withdrawal of the appropriation from being used under the proceedings there directed. This amounted to a prohibition to the Commissioners to take the property at the appraised value, or to use the appropriation for the payment of the amount of the appraisement.

It is of no consequence, it seems to us, that in the act of August 7, 1894, Congress avowed its continued purpose to acquire the land by condemnation. If this act were wholly void, as claimed by the appellee, this avowal would be as nugatory as the rest of it. If, on the other hand, the act should be given effect so as to show such avowal and to bind the Commissioners more firmly to the act of December 21, 1893, it should also be given effect for any other legitimate purpose which it may subserve, and the avowal of purpose should be taken as qualified by the limitations, express and implied, of the act.

We are of opinion, therefore, that the act of August 7, 1894, although ineffectual for the purpose of a readjudication of the question of the value of the land proposed to be taken by condemnation, is a valid repeal of the mandatory clauses of the act of December 21, 1893, and a refusal by Congress to take the land at its adjudicated value—consequently, a withdrawal by Congress from the enterprise. Being of that opinion, we cannot think that the writ of *mandamus* will lie to compel the Commissioners to do what, it appears to us, they are prohibited by Congress from doing.

We think there was error in the awarding of the writ by the court below ; and its order to that effect must therefore be *reversed, with costs ; and the cause will be remanded to the court below, with directions to discharge the writ; and dismiss the petition. And it is so ordered.*