Burket, C. J.
Two questions arise in this case. First — Whether in the administration of our tax laws in this state, the holder of shares in a national bank has the right, under the statutes, state and national, to deduct his legal bona fide debts from the value of such shares, and to be taxed only upon the remainder, or must he pay taxes on the assessed value of such shares without a deduction of such debts? Second — Has the defendant in error by the record in this case, shown itself entitled to enforce such deduction for its said shareholders? The determination of these questions in this case, must depend upon the record, and the law property applicable thereto.
These are federal questions, and can only be finally and authoritatively determined by the Supreme Court of the United States. They will both be considered together.
Sections 2730 and 2737, Revised Statutes of this-state, contain most of the statute law of the state bearing- on the subject. They are as follows:
Section 2730. In this title, the terms “real property” and “land” shall be held to mean and include not only land itself, whether laid out in town lots or otherwise, with ail things contained therein, . but also, unless otherwise specified, all buildings, structures, and improvements, and fixtures of whatever kind thereon, and all rights and privileges belonging, or in anj^wise appertaining thereto; the terms “investment in bonds,’’shall be held to mean and include all moneys in bonds, or certificates of indebtedness, or other evidences of indebtedness of whatever kind, whether issued *317 by incorporated or unincorporated companies, towns, cities, villages, townships, counties, states or other incorporations, or by the United States, held by persons residing in this state, whether for themselves or others; the terms “investments in stocks,” shall be held to mean and include all moneys invested in the capital or stock of any association, corporation, joint stock company, or other company, the capital or stock of which is or may be divided into shares, which are transferable by each owner without the consent of the other partners or stockholders, for the taxation of which no special provision is made by law, held by persons residing in this state, either for themselves or others; the terms “personal property,” shall be held to mean and include, first, every tangible thing being- the subject - of ownership, whether animate or inanimate, other than money, and not forming part of any parcel of real property, as hereinbefore defined; second, the capital stock, undivided profits, and all other means not .forming part of the capital stock of every company, whether incorporated or unincorporated, and every share, portion or interest in such stock, profits or means, by whatsoever name the same may be designated, inclusive of every share or portion, right or interest, either legal or1 equitable, in and to every ship, vessel or boat, of whatsoever name or description, used or designed to be used either exclusively or partially in navigating any of the waters within or bordering on this state, ■ whether such ship, vessel, or boat, shall be within the jurisdiction of this state or elsewhere, and whether the same shall have been enrolled, registered, or licensed at any collector’s office, or within any collection district in this state or not; *318 third, the money loaned on pledge or-mortgage of real estate, although a deed or other instrument may have been given for the same, if between the parties the same is considered as security merely the term “money” or moneys,” shall be held to mean and include any surplus or undivided profits held by societies for savings or banks having’ no capital stock, gold and silver coin, bank notes of solvent banks, in .actual possession, and every deposit which the person owning, holding in trust, or having the beneficial interest therein, is entitled to withdraw, in money on demand; the term “credits,” shall be held to mean the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for labor or service due. or to become due to the person liable to pay taxes thereon, including deposits in banks or with persons in or out of the’ state, other than such as are held to be money, as herein before defined, when added together (estimating every such claim or demand at its true value in money), over and above the sum of legal tona fide debts owing by such person; but in making up the sum of such debts owing, there shall be taken into account no obligation to any mutual insurance company, nor any unpaid subscription to the capital stock of any joint stock company, nor any subscription for any religious, scientific, literary, or charitable purpose; nor any acknowledgment of any indebtedness, unless founded on some consideration actually received, and believed at the time of making such acknowledgment to be a full consideration therefor; nor any acknowledgment made fqr the purpose of diminishing the amount of credits to be listed for taxation; nor any greater amount or portion of any liability as *319 surety, than the person required to make the statement of such credits believes that such surety is in equity bound, and will be compelled to pay, or contribute, in case there be no securities! provided, that pensions receivable from the United States shall not be held to be credits ; and no person shall be required to take into account in making up the amount of credits, a greater portion of any credits than he believes will be received or can be collected, or any greater portion of any obligation given to secure the payment of rent than the amount that shall have accrued on any lease and remain unpaid; words importing the masculine gender shall apply to females also, and the word ‘person’ or ‘party, ’ or other word importing the singular number, shall be held to include firms, companies, associations, and corporations; and all the words in the plural number shall apply to single individuals also, in all cases in. which the spirit and intent may require.”
Section 2737. Such statements shall truly and distinctly set forth, first, the number of horses, and the value thereof; second, the number of neat cattle, and the value thereof; fourth, the number of sheep, and the value thereof; sixth, the number of pleasure carriag’es (of whatever kind), and the value thereof; seventh, the total value of all articles of personal property, not included in the preceding or succeeding classes; eighth, the number of watches, and the value thereof; ninth, the number of pianofortes and organs, and the value thereof; tenth, the average value of the goods and merchandise, which such person is required to list as a merchant; eleventh, the value of the property which such person is required to list asa banker,'broker, or stockjobber; twelfth, *320 the average value of the materials and manufactured articles which such person is required to list as a manufacturer ; thirteenth, • moneys on hand or on deposit subject to order; fourteenth, the amount of credits as hereinbefore defined; fifteenth, the amount of all moneys invested in bonds, stocks, joint stock companies, annuities, or otherwise; sixteenth, the monthly average amount or value, for the time he held or controlled the same, within the preceding year, of all. moneys, credits, or other effects, within that time invested in, or converted into bonds or other securities of the United States or of this state, not taxed, to the extent he may hold or control such bonds or securities on said day preceding the second Monday of April; and any indebtedness created in the purchase of such bonds or securities shall not be deducted from the credits under the fourteenth item of this section; but the person making such' statement may exhibit to. the assessor the property covered by the first nine items of this section, and allow the assessor to affix the value thereof, and in such case the oath of the person making the statement shall be in that regard only that he has fully exhibited the property covered by said nine items, ’ ’
It will be noticed that national bank shares fall within the definition of “investments in stock.” and that they are what is known as “personal property.” It will further be noticed that the surplus and undivided profits of saving societies, and ■ banks having no capital stock, and money on deposit subject to withdrawal on demand, are classed as money and not as credits.
A credit is defined in short to be what is owing to a person, over and above his legal bona fide *321 debts, but in making up what is owing to him he cannot include moneys, bonds, stocks, nor deposits subject to withdrawal on demand; and he cannot deduct as legal tona fide debts an obligation to a mutual insurance company, nor an unpaid subscription to the capital stock of a joint stock company, nor to any religious, scientific, literary or charitable purpose, nor any acknowledgment of any indebtedness unless founded on full consideration, nor an acknowledgment made for the purpose of diminishing the amount of credits to be listed for taxation, nor any g’reater amount as surety than he is likely to be compelled to pay, nor any indebtedness created in the purchase of nontaxable securities.
It will be noticed that there is a large class of indebtedness that cannot be deducted from the credits, and to enable the bank to fairly raise the legal question in this case it should show that the debts sought to be deducted were of the class that our statute allows to be deducted from credits, and that such deductions were generally made by others to an extent that materially affected the said shareholders financially. A mere theoretical discrimination is not sufficient, it must be actual and material.
The petition avers that a large amount of moneyed capital in the hands of individual citizens of said state and county invested in promissory notes, and other legal obligations, t securities, claims and demands, is by allowing a deduction of legal tona fide debts to be made therefrom, exempted from taxation, but this averment is denied in the answer, and the court does not find it to be true.
So that for aught that appears in the finding’s of fact by the court, there was no deduction of debts *322 made from credits, either in the state or county, and the only effort that was made to have such deduction so far as thi^s record shows, was the effort on the part of these eight shareholders, and that was unsuccessful.
The petition avers that “between the first and second Mondays in May of said year, each of said above named shareholders was indebted and owing to others, of legal bona ficle debts, a sum in excess of the credits from which, under the laws of Ohio, he was entitled to deduct said debts to an amount equal to the value of said shares, which said excess of said debts over credits as aforesaid, the said stockholders abovenamed were entitled to have deducted from the assessed value of said shares so severally owned by them, proof of which fact was duly made to said auditor and said state board of equalization by the shareholders at the time that they respectively fixed the valuation of said shares of stock.” This averment does not say that the legal bona fide debts owed by said stockholders and not used as a deduction from credits in making- out their tax lists to the assessor, were not of the class which are not authorized to deduct from the credits, nor that they were of the class which are authorized to be so deducted. The averment is denied by the answer, and this put the bank upon its proof. As a result of such proof the court finds that “between the first and second Mondays of May of said' year, each of said above named shareholders was indebted and owing to others of legal bona fid,e debts a sum in excess of the credits, from which, under the laws of Ohio, he was entitled to deduct said debts to an amount equal to the value of said shares. That proof of said indebtedness was duly made to said *323 auditor by the shareholders aforesaid at the time that the valuation of said shares of stock was so fixed by him, and that said auditor refused to allow the deduction of any indebtedness of said shareholders from the value of said shares, as so fixed by said board of equalization.”
While the court finds that there was an excess of indebtedness over credits to an amount equal to the value of said bank shares, it fails to find that such indebtedness was of the character which is authorized under the statutes of Ohio to be deducted from credits.
This court cannot presume, in the face of this record, that any deductions of debts from credits were made by individual citizens in the year of 1893, nor can it presume that the said debts of said stockholders were of the class, authorized to be deducted from credits. Under our practice, the presumption is, that the court found all the facts which the proof warranted, and facts not found by the court are presumed not to exist. Jones v. Brown, 11 Ohio St., 606 ; Springer v. Avondale, 35 Ohio St., 624.
It is therefore clear that this record fails to bring the debts sought to be deducted, within the class which is authorized to be so deducted.
It appears from said sections 2730 and 2737, that the taxable property of this state is classified as follows: That f roin which no deduction of debts can be made, and that-f rom which certain legal bona fide debts may be deducted. The former consists of real estate, including lands, lots, building's, structures, improvements, fixtures and privileges thereto belonging; and also personal property, such as horses, cattle, mules, asses, sheep, hogs, carriages, wagons, harness, watches, clocks, musi *324 cal instruments, diamonds, jewelry, goods, merchandise, material used -in manufacturing-, capital employed by a banker, broker, stock-jobber, moneys on hand, or on deposit subject to order, bonds, stocks, shares in joint stock companies, annuities, and all other personal property other than credits, and amounting in the whole state, as shown by the official reports for the year 1893, to over one billion, six hundred and thirty-six million dollars. That from which certain legal bona fide debts may be deducted consists of credits alone, but money on deposit subject to order cannot be counted as a credit, and the credits in the state to taxation in the year 1893, as shown by the official reports, amounted to only one hundred and six million dollars. The amount of debts deducted has not been reported, and is not officially known, but is likely to be small as compared with the credits returned.
In addition to these two classes of taxable property, we have in this state another class which is free from taxation, and which under section 2732 Revised Statutes, consists of property real and personal, used for public schools, public colleges, public academies, public worship, cemeteries, state and United States property, county buildings, poor-houses, public charities, fire departments, markets, public grounds, public halls, soldiers’ monuments, and personal property not exceeding one hundred dollars to each taxpaying individual in the state, and which-exempted property amounts to over one hundred and sixty million dollars in value, as shown by the official reports.
It thus appears that credits from which certain debts may be deducted, form but a small and comparatively insignificant part of our taxable prop *325 erty, and are even less than our nontaxable property.
It is not the amount of credits of which the national bank shareholders complain, but of the amount of debts deducted from credits, and which deductions thereby escape taxation, and increase the taxes on such shareholders. These deductions, whose definite amount is not known, can form but a very small per centum of the total taxable property ; and hence if there is any discrimination against such shareholders, it is only the same discrimination that is suffered by the holders of all kinds of property, other than credits, and even by such holders of credits as owe no debits to be deducted therefrom.
Persons owning- bonds issued by corporations, cities, villages, counties, states or other public bodies, can have no deduction- of debts therefrom. Payne v. Patterson, 37 Ohio St., 121. Neither are owners of stocks, investments in stocks, or joint stock companies, entitled under the laws of this state to deduct debts therefrom. National bank shares are what are known as stocks, or investments in stocks, and there is no act of congress to the contrary, and from such stocks there can be no deduction on account of debts. Niles v. Shato, 50 Ohio St., 370.
But it is said by counsel for the bank, that the question is res adjudicata, and has been determined and settled by the Supreme Court of the United States in Whitbeck v. Mercantile National Bank of Cleveland, 127 U. S., 193.
The part of the syllabus on this subject is as follows:
“The statutes of Ohio regulating assessments for taxation allow an owner of moneyed capital *326 other than shares in a national bank to have a deduction equal to his bona fide indebtedness made from the amount of the assessment of the value of such moneyed capital; but they make no provision for a similar deduction from the assessed value of shares in a national bank, and provide no means by which such a deduction may be obtained. Held : That the owners of such shares are entitled to have a deduction of their indebtedness made from its assessed value as in the case of other moneyed capital.”
That holding was right if the statute of Ohio were as recited. But as already shown, the statutes of Ohio do not allow a deduction equal to the bona fide debts to be made from the amount of the assessments of the value of moneyed capital in general, but only from a small and comparative insignificant amount of moneyed capital called “credits, ” and even from, credits only a certain and limited class of debts. If the court had recited in the syllabus as a predicate for its holding, the provisions of the Ohio statute as they really are, the holding would most likely have been different, •and would have been as in First National Bank of Garnett v. Ayers, 160 U. S., 660, in which the syllabus is as follows :
“The single fact that the statutes of Kansas regulating the assessment and taxation of shares in national banks permit some debts to be deducted from some moneyed capital, but not from that which is invested in the shares of national banks, is not sufficient to show that the amount of moneyed capital in the state of Kansas from which debts may be deducted, as compared with the moneyed capital invested in shares of national banks, is so larg’e and substantial as to amount *327 to an illegal discrimination against national bank shareholders, in violation of the provisions of Revised Statutes, section 5219. ”
No examination of the provision of the Ohio statute by the court is found in the opinion in the Whitbeck case, except as to the procedure in demanding the deduction, and even as to that there is no examination shown by the court, but the finding of the circuit court is accepted as to such provisions.
The sections of the Kansas statute under review in the Ayer’s ease, are almost identical with sections 2730 and 2737 of our own state, and it would seem that the facts being the same, the same construction should obtain as to each.
In the Whitbeck case it is assumed by the court, or at least recited in effect, that the statutes of Ohio are in substance the same as the statutes of New York, and permit a deduction of debts from the total amount of personal property, and Hills v. Exchange Bank, 105 U. S., 319, is cited as authority for the holding-. But turning to that case, we find that the principle upon which it was decided is, that the shareholders were not allowed to deduct their debts from their shares, while other parties were allowed to deduct their debts from the total amount of their personal property,’and the case is founded upon Supervisors v. Stanley, 105 U. S., 305, decided at the same time, and in that case the statute of New York is set out, and shows that the owners of all personal property other than national bank shares, are allowed to deduct their debts from the total amount of their personal property.
If our statute contained that provision, it would be conceded at once that the holders of national bank shares should be accorded the same *328 right; but they contain no such provision, and therefore it seems only proper that the question should again be presented to, and considered by the Supreme Court of the United States.
That no discrimination against national banks was intended by the passage of the Ohio statutes, is conclusively shown by the fact that those statutes were passed long before national banks were created, and have remained the same in substance ever since. No discrimination appears on the face of the statute, and that none is worked out in its execution, will be shown further on.
That the main purpose of congress in fixing limits to taxation on shares in national banks, was to render it impossible for the state to create and foster an unfriendly competition by favoring’ state institutions or individuals in carrying'on a similar business, has been several times held by the Supreme Court of the United States, and seems now to be sett Led. Mercantile Bank v. New York, 121 U. S., 138; First National Bank of Garnett v. Ayers, 160 U. S., 660.
When the laws of a state tax money capital employed in national banking the same as that employed in state banks, it is held that there is no discrimination against national bank capital, unless there is in other respects a clear discrimination in favor of money capital, other than that employed in either state or national banking. Bank v. Ayers, 160 U. S. , 660. But in this state both national and state banks are taxed under the same section, being section 2762, Revised Statutes, and in fixing the value of the shares, the bank deducts its debts from its credits, so that it pays taxes only on the net valuation. Unincorporated banks are taxed in the same manner, by deducting *329 debts from credits, so as to pay only on the net capital stock. By section 2759, in the case of incorporated state banks, after the deduction of debts from the credits are made, and the net value of each share -of stock thus ascertained, the holder of such stock is. compelled to pay taxes upon such value, and is .not permitted to deduct his legal bona fide debts therefrom. In the case of unincorporated banks, when the net value of the capital is ascertained, the bank pays the taxes thereon, and the several owners of the capital are not allowed to deduct any of their debts from their share of such capital. It is thus clear that moneyed capital invested in national banks is placed upon an exact equality with moneyed capital invested in state banks, and this is all that, can be reasonably asked for national banks, in the absence of a showing to the effect that moneyed capital invested in state banks is unreasonably discriminated against. ^ That there is no discrimination against capital invested in state banks, is so clear that no argument is required to establish the fact; and that capital invested in national banks is put upon an exact equality with capital invested in state banks, is equally clear from the sections above referred to. It would therefore seem clear that there is no such discrimination against national bank shares as to give just ground for complaint.
In the case of Davenport Bank v. Davenport, 123 U. S., 83, the Supreme Court of the United States in passing upon this question say in the syllabus :
‘ ‘Section 5219, Revised Statutes, respecting the taxation of national banks, does not require perfect equality between state and national banks, but only that the system of taxation in a state *330 shall not work a discrimination favorable to its own citizens and corporations, and unfavorable to holders of shares of national banks.”
‘ ‘If a state statute creating a system of taxation does not on its face discriminate against national banks, and there is neither evidence of legislative intent to make such discrimination, nor proof that the statute works an actual and material discrimination, there -is no ease'for holding it to be unconstitutional. ”
In Ohio the system of taxation places state and national banks upon an exact equality without discrimination, and in the case at bar there is no proof, and no finding by the court, that the statutes work either an actual or material, discrimination. It is only by giving the. holder of state bank shares all the rights that a holder of national bank shares is allowed, and then after the net value of his bank shares has been so ascertained, taking him out of the class of holder of stocks (from which no deduction of debts can be made), and changing’ his stock into a credit and then placing him into the class of a holder of credits (from which deduction of debts may be made), that there is, even a semblance of discrimination. But this semblance is not shown to be actual, and is certainly not shown to be material, because it does not appear in this record that any others in the county or state deducted debts from credits, and there is no official report from which such fact can be ascertained.
While the official blanks of assessors require each person to give a statement of the total amount of his credits, and then the total amount of his legal bona fide debts, and the balance of credits over debts is carried out as the amount *331 to be taxed, the amount of debts so deducted has not been carried into the official report, and this court has no means of knowing the amount, as no finding was made of such amount by the court of common pleas, and therefore, for the purposes of this case, the fact of such deductions does not exist.
In this case as in the Kansas ease, there is an entire lack of proof on this subject, and in the absence of official records, this court cannot presume that any such deductions were made, and, certainly not to an amount which would make an unlawful discrimination against national bank shares.
To place the holder of national bank shares into the class of bankers, and treat his shares as stocks until the net value is fixed, and then change his stock into a credit, and ta se him out of the class of bankers and place him into the class of private individuals, so as to enable him still further to reduce his stock thus changed into a credit, by deducting therefrom his legal bona fide debts, would be discriminating in favor of such national bank shareholder, and would be giving him two chances to escape taxation, while other bankers and private individuals have but one.
Such a result was certainly not intended by the act of congress in question.
• There are about forty-six million dollars invested in national bank shares in this state, and it is impossible to put such shares upon an exact equality with all other moneyed capital. If classed as credits, which they are not, there will be a discrimination in their favor and against other stocks, bonds and the great body of our taxable property, from which no deductions on .account of *332 debts are allowed. If treated as stocks, which they are, under court classification, there is no discrimination against them as compared with other stocks, and bonds and the great bulk of our taxable property.
To put national bank shares upon an equality with the most favored class of property, would free them from all taxation, as more than one hundred and forty millions in value, of public and other property, is relieved from all taxation in this state, while the whole national bank stock amounts to only forty-six millions.
The question then is, shall national bank shares be placed with the most favored class of property, and not be taxed at all, or shall they be classed as stocks until their net value shall be fixed, and then changed into the class of credits so as to permit their holder to deduct therefrom his legal bona fide debts .and thus be favored above the holders of other stocks, or shall they be classed as mere credits, from the face value of which legal bona fide debts may be deducted, or shall they be regarded and treated as stocks, which they really are, and classed with stocks and bonds and the great body of our other moneyed capital, and be taxable at their true money value without deducting the debts of the owners therefrom, as is provided for all other banks 'and bankers by sections 2759 and 2762 of our statutes, and by section three of article twelve of our constitution?
We think that national bank shares belong to the class known as stocks, and not to the class known as credits, and that such shares cannot have the double advantage of both stocks and credits, and 'that the holders of such shares have no right under the statutes, state and national, to *333 deduct their legal bona fide debts from the assessed value of such shares.
It follows that the judgment of the circuit court must be reversed, and that of the common pleas affirmed.

Judgment accordingly.