## SUPERVISORS v. STANLEY.

1. The provisions of the statute of 1866 of New York, providing for the assessment and taxation of the stockholders of a bank or banking association on the value of their shares of stock, are in conflict with the act of Congress, so far as they do not permit a stockholder of a national bank to deduct the amount of his just debts from the assessed value of his stock, while by the laws of the State the owner of all other personal taxable property can deduct such debts from its value.

2. The statute is not, however, rendered void by reason of such conflict, nor is the assessment thereunder of the shares of stock in national banks of no effect. If the stockholder has no debts to deduct, the prescribed mode of assessment is valid, and he cannot recover the tax paid pursuant thereto; if he has debts, the assessment excluding them from computation is voidable, but the assessing officers act within their authority until they are duly notified that he is entitled to deduct such debts.

3. If the assessing officers proceed after such notice, and act in violation of the act of Congress, he may take the requisite steps to secure that deduction, and, when secured, the residue of the statute remains valid.

ERROR to the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

Mr. *Rufus W. Peckham* and Mr. *Wheeler H. Peckham* for the plaintiffs in error.

Mr. *George F. Edmunds* and Mr. *Matthew Hale* for the defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

Stanley recovered a judgment against the Board of Supervisors of the County of Albany, for taxes exacted and paid under legal process on shares of the stock of the National Albany Exchange Bank. A large number of the shareholders of the bank who had paid this tax made an assignment of their claims to him, and the judgment was for the sum of $61,991.20, with interest and costs.

The ground of this recovery was that the statute of New York, under which the shares were assessed, was void, because it did not permit the shareholder to make deduction of the amount of his debts from the valuation of his shares of stock, in ascertaining the amount for which they should be taxed.

The pleadings in the case set out the sums paid by the stockholders and their names, and their assignment to Stanley, the payment under compulsion of legal process, and a demand for the repayment on the Albany County authorities.

The case was submitted to the court on a waiver of trial by jury, and on the finding of facts and conclusions of law thereon by the court, judgment was rendered for plaintiffs. The facts found by the court are thus stated : —

" *First*, That the allegations of the complaint in regard to the citizenship of the plaintiff, the citizenship and powers and liabilities of the defendant, the organization and capital of the National Albany Exchange Bank, the ownership of the shares of capital stock of the National Albany Exchange Bank, the assessment of the stockholders in said bank, named in said complaint, by the board of assessors of the city of Albany, the names and residences of said stockholders, the collection of taxes from said stockholders, and the payment of the same to the county treasurer of the county of Albany, and the demand made by Chauncey P. Williams, before the commencement of this action of the treasurer of the county of Albany, are true as therein set forth.

" *Second*, That the amounts collected from the said stockholders and paid to the treasurer of the county of Albany, and the times when the said amounts were so paid to said treasurer, were as follows, to wit : —

| | |
|---|---|
| $907 90 paid . . . . . . . . . . | August 11, 1874 |
| 127 84 paid . . . . . . . . . . | August 11, 1874 |
| 1,868 06 paid . . . . . . . . . . | May 1, 1875 |
| 1,409 33 paid . . . . . . . . . . | May 27, 1876 |
| 1,202 32 paid . . . . . . . . . . | May 3, 1877 |
| 1,336 60 paid . . . . . . . . . . | April 17, 1878 |
| 1,473 02 paid . . . . . . . . . . | April 22, 1879 |
| 11,604 75 paid . . . . . . . . . . | May 1, 1875 |
| 8,147 26 paid . . . . . . . . . . | May 27, 1876 |
| 7,822 34 paid . . . . . . . . . . | May 3, 1877 |
| 7,357 94 paid . . . . . . . . . . | April 16, 1878 |
| 6,243 20 paid . . . . . . . . . . | April 21, 1879 |

" *Third*, That the sums above named were not paid voluntarily by said stockholders, but were forcibly collected by the

marshal of the city of Albany, under a warrant issued to such marshal by the receiver of taxes of said city, pursuant to a warrant issued to said receiver of taxes by the board of supervisors of the county of Albany, by levying upon the property of the said stockholders respectively, as alleged in said complaint.

"*Fourth*, That the said assessments were made and said amounts collected and received by the treasurer of the county of Albany, as above stated, under color of an act of the legislature of the State of New York, entitled 'An Act authorizing the taxation of stockholders of banks, and surplus funds of savings banks,' passed April 23, 1866, being chapter 761 of the laws of 1866, and not otherwise.

"*Fifth*, That the allegations of the complaint with reference to the assignments by the respective stockholders of said bank of their claims against the county of Albany, by reason of the matters alleged in the said complaint, are true as set forth in said complaint, and that the plaintiff, at the time of the commencement of this action, was the holder and owner of all claims against the county of Albany, or against the defendant, arising out of the matters alleged and set forth in said complaint.

"*Sixth*, That the said act of the legislature of the State of New York, chapter 761 of the laws of 1866, did not permit the deduction of debts owing by the owners of stock in banks or banking associations, in the assessment thereof for taxation, although such deduction of debts of the owner was, at the time of the assessments alleged in the said complaint, permitted and required by the laws of the State of New York to be made from the value of every kind of personal property and moneyed capital, other than bank stock, in assessing the same for the purpose of taxation.

"*Seventh*, That the allegations in the fourth count of said complaint, as to the presentation to the said board of assessors by said Chauncey P. Williams of the affidavit of his indebtedness, and the request by him for a reduction of his assessment on his bank stock, and the refusal of said board of assessors to make such reduction, and the application by said Williams to the Supreme Court of the State of New York for a writ of

*mandamus*, and the subsequent legal proceedings thereon, including the decision of the Supreme Court of the United States, are true, as set forth in said fourth count.".

It does not appear by this finding of the court that any shareholder, for whose payment of taxes this suit is brought, made affidavit or other application in regard to his indebtedness, that it might be deducted from his assessment, or that he owed anything to be deducted from the assessed value of his shares, except the seventh finding of facts in regard to C. P. Williams.

Unless, therefore, the other shareholders who paid the tax on the shares of their stock were entitled to recover back the sum paid without any evidence that they had made affidavit of the amount which they would be entitled to deduct from the assessment of their shares, if the same rule had been applied to assessment of bank shares as to other personal property, and without any evidence that they owed anything whatever to be deducted from any assessment of their personal property, including bank shares, the judgment in this case cannot be supported.

The judge who decided the case on the circuit found as a conclusion of law that the assessment of all shares of national banks was void, because the statute of New York, under which the assessments were necessarily made, was void, as being in conflict with the act of Congress on that subject, and he declares, in an opinion delivered in the case of *The National Albany Exchange Bank* v. *Hills, Receiver of Taxes*, in a chancery suit, that the assessments in this class of cases are absolutely void, the assessors having acted without any jurisdiction.

If this view of the subject be sound, — if the officers who assessed and collected this tax were utterly without authority to collect any tax whatever, or, if there was no law by which in any case they could assess and collect a tax on shares of national banks, — then it is of no consequence to inquire of anything beyond the fact that plaintiff's assignors did pay such a tax under legal compulsion.

On the other hand, if the law is for any purpose a valid law, and if it can be held to furnish the rule of taxation as to any class of owners of national bank shares, then the *onus* is on plaintiff to show that his assignors are not of that class.

The question here to be decided arises under two statutes of the State of New York in regard to taxation.

The first of these is the act of 1850, relating to the assessment and collection of taxes in the city of Albany. The sixth section of the act requires the board of assessors to prepare an assessment-roll, in which there shall be set opposite the name of each taxpayer, (1) All his real estate liable to taxation and its value; (2) The full value of all his personal property after deducting the just debts owing by him.

Section 9 of the act is as follows : —

"If any person shall at any time before the assessors shall have completed their assessments make affidavit that the value of his real estate does not exceed a certain sum, to be specified in such affidavit, or that the value of the personal estate owned by him, after deducting his just debts, and his property invested in the stock of any corporation or association liable to be taxed therefor, does not exceed a certain sum, to be specified in the affidavit, it shall be the duty of the board of assessors to value such real or personal estate, or both, as the case may be, at the sum specified in such affidavit, and no more."

In 1866 the State enacted a law concerning the taxation of bank shares, which was evidently intended to meet the requirements of the act of Congress in relation to State taxation of the shares of national banks, and the provision of this statute related only to taxing stockholders in banks, and to the capital invested in individual banks. The first section of this act reads as follows, and it contains no other provision for deductions as the basis of taxation, except what is found in this section : —

"No tax shall hereafter be assessed upon the capital of any bank or banking association organized under the authority of this State or of the United States, but the stockholders in such banks and banking associations shall be assessed and taxed on the value of their shares of stock therein; said shares shall be included in the valuation of the personal property of such stockholder in the assessment of taxes at the place, town, or ward where such bank or banking association is located, and not elsewhere; whether the said stockholder reside in said place, town, or ward, or not, but not at a greater rate than is assessed upon other moneyed capital in

the hands of individuals in this State. And in making such assessment there shall also be deducted from the value of such shares such sum as is in the same proportion to such value as is the assessed value of the real estate of the bank or banking association, and in which any portion of their capital is invested in which said shares are held to the whole amount of the capital stock of said bank or banking association. *And provided further*, that nothing herein contained shall be held or ,construed to exempt from taxation the real estate held or owned by such bank or banking association; but the same shall be subject to State, county, municipal, and other taxation to the same extent and rate and in the same manner as other real estate is taxed."

In the case of *People* v. *Dolan* (36 N. Y. 59), the question was whether, taking these two statutes together, an owner of shares of stock in a national bank was entitled to deduct from the assessed value of his shares the just debts owing by him. It was argued that into this act of 1866 for the taxation of bank shares there should enter, as part of it, the provision of the act of 1850 which allowed this deduction as to all personal property, and that nothing in the act of 1866 forbade this or was inconsistent with it. It was also insisted that unless the act of 1866 was so construed it would violate the act of Congress which only permitted the shares of national banks to be taxed at the same rate as other money capital of the citizens of the State.

But the Court of Appeals overruled both propositions, and held that the true meaning of the act of 1866 was that no such deduction should be made, and that as thus construed it was not in conflict with the act of Congress on that subject.

In a subsequent case, Williams, a shareholder in the National Albany Exchange Bank, made the affidavit required by sect. 9 of the act of 1850, and presenting it to the board of assessors of the county, demanded a reduction in accordance with it, from the valuation of his bank shares. On the refusal of the assessors to comply with this request, a proceeding was commenced in the courts of the State, in which the Court of Appeals reaffirmed the principles of the case of *People* v. *Dolan*. That case coming into this court by writ of error, it was here held that while we were bound to accept the decision of the

highest court of the State in construction of its own statute the act of 1866 as thus construed was in that particular in conflict with the act of Congress, because it did tax shares of the national banks at a higher rate than other moneyed capital in the State. It is reported in 100 U. S. 539, and there are no words which declare the act of 1866 to be void, but the careful language of the decision is, that "in refusing to plaintiff the same deduction for debts due by him from his shares of national bank stock that it allows to others who have moneyed capital otherwise invested, it is in conflict with the act of Congress." p. 546.

Accepting, therefore, as we must, the act of 1866, as construed by the Court of Appeals of New York, as not authorizing any deduction for debts by a shareholder of a national bank, is it for that reason absolutely void? This cannot be true in its full sense, for there is no reason why it should not remain the law as to banks or banking associations organized under the laws of the State, or as to private bankers, of which there no doubt exists a large number of both classes.

What is there to render it void as to a shareholder in a national bank, who owes no debts which he can deduct from the assessed value of his shares? The denial of this right does not affect him. He pays the same amount of tax that he would if the law gave him the right of deduction. He would be in no better condition if the law expressly authorized him to make the deduction. What legal interest has he in a question which only affects others? Why should he invoke the protection of the act of Congress in a case where he has no rights to protect? Is a court to sit and decide abstract questions of law in which the parties before it show no interest, and which, if decided either way, affect no right of theirs?

It would seem that if the act remains a valid rule of assessment for shares of State banks, and for individual bankers, it should also remain the rule for shareholders of national banks who have no debts to deduct, and who could not, therefore, deduct anything if the statute conformed to the requirements of the act of Congress.

It is very difficult to conceive why the act of the legislature should be held void any further than when it affects some

right conferred by the act of Congress. If no such right exists, the delicate duty of declaring by this court that an act of State legislation is void, is an assumption of authority uncalled for by the merits of the case, and unnecessary to the assertion of the rights of any party to the suit.

The general proposition must be conceded, that in a statute which contains invalid or unconstitutional provisions, that which is unaffected by these provisions, or which can stand without them, must remain. If the valid and invalid are capable of separation, only the latter are to be disregarded.

In *Railroad Companies* v. *Schutte* (103 U. S. 118), decided at the last term, this point was pressed upon us with much earnestness, and its decision was necessary to the judgment of the court. " It is contended," said the court, " that as the provision of the act in respect to the execution and exchange of the State bonds is unconstitutional, the one in relation to the statutory lien on the property of the company is also void and must fall. We do not so understand the law." And yet this was a case in which the scheme of exchanging the bonds of the State for the bonds of the company, in order that the company might get the benefit of the better credit of the State, was accompanied by a mortgage created alone by the statute in favor of the State as her security ; and the court, while holding that the exchange of bonds was void, as being in conflict with the Constitution of the State of Florida, held that the mortgage which secured the bonds of the company, and which was only a mortgage by operation of the same statute, was valid.

This court, in the two cases cited in the brief, *United States* v. *Reese* (92 id. 214) and *Trade-Mark Cases* (100 id. 82), concedes the general principle that the whole of a statute is not necessarily void because a part of it may be so. Said the court in the latter case : " While it may be true that when one part of the statute is valid and constitutional, and another part is unconstitutional and void, the court may enforce the valid part where they are distinctly separable, so that each may stand alone, it is not within the judicial province to give to the words used by Congress a narrower meaning than they are manifestly intended to bear." The first case also implies that

there may be unconstitutional provisions which do not vitiate the whole statute or even a single section, because the argument is to show that in that case there could be no separation of the good from the bad. It is also to be observed that in both these cases it was a statute creating and punishing offences criminally which was to be construed in regard to the limited constitutional power of Congress in criminal matters.

*Case of the State Freight Tax* (15 Wall. 232) arose out of a statute of Pennsylvania which attempted to impose a tax on commerce forbidden by the Constitution of the United States. The act imposed a tax upon every ton of freight carried by every railroad company, steamboat company, and canal company doing business within the State. The railroad companies, who contested the tax, presented a statement which separated the freight transported by them between points solely within the State and limited to such destination, and that which was received from or carried beyond those limits. This court held the latter to be void as a tax on inter-state commerce, and did not declare the whole tax or the whole statute void. It said : " It is not the purpose of the law, but its effect, which we are now considering. Nor is it at all material that the tax is levied upon all freight, as well that which is wholly internal as that embarked in inter-state commerce. . . . The conclusion of the whole is that, in our opinion, the act of the legislature of Pennsylvania of Aug. 25, 1864, so far as it applies to articles carried through the State, or articles taken up in the State and carried out of it, or articles taken up without the State and brought into it, is unconstitutional and void." The same language is repeated in *Erie Railway Co.* v. *Pennsylvania* (id. 282), decided at the same time. Both cases were remanded to the State court for further proceedings in conformity with the opinion, which could only mean to enforce the tax on transportation limited to the State and not on inter-state commerce.

This is a clear case of distinguishing between the articles protected by the Constitution of the United States and those which were not, though nothing in the language of the statute authorized any such distinction.

But in a review of the cases in this court on this subject, *Austin* v. *The Aldermen* (7 Wall. 694) will be found most

nearly to resemble the one before us. · It related to the same matter of the invalidity of a statute of a State taxing shares of the national banks as being in conflict with the act of Congress. That act said that such taxes might be assessed *at the place where said bank was located, and not elsewhere.*

The statute directed the assessment and taxation of the shares at the *place where the owner resided.* Austin, having contested the tax on his shares in the courts of the State unsuccessfully, brought the case here by writ of error. This court declined to enter upon the question of the validity of the statute, because the case did not show that he was taxed on his shares in any other place than that where the bank was located.

The argument of counsel in the case before us is that any tax, or a tax on any person on account of his bank shares, is void because the whole of the New York statute is void. If the argument is sound, it was equally applicable to Austin's case, in which the statute, which made no limitation of taxation to the place where the bank was located, must have been held void under any principle which would wholly invalidate the statute of New York, because the latter did not allow the deduction of the owner's indebtedness from his shares. And if in that case the Massachusetts statute was utterly void as to national bank shares, then the tax on Austin's shares in Boston was void, and he had *a right to be protected* against the unconstitutional statute. The court evidently went upon the principle that the statute was only void as against the act of Congress, in cases where some one was injured by the particular matter in which there was such conflict. The case seems to us directly in point.

· To the same effect are the cases of *People* v. *Cassity*, 46 N. Y. 46; *Gordon* v. *Cornes*, 47 id. 608; *In the Matter, &c., Village of Middleton*, 82 id. 196.

If we examine the statute before us on principle, we shall find but little reason to hold it to be wholly void as regards bank shares. If the statute stood alone, there is nothing in it in conflict with the act of Congress. It is only when we look to the other statute, which permits the deduction of debts from the entire value of personal property, that we discern the dis-

crimination against bank shares. The act declares that bank shares shall be taxed according to their value, after deducting the real estate and other property on which the bank itself pays tax. This is eminently just. It provides for a mode of ascertaining their value, the officers who shall do it, and how the tax shall be collected. In all this the law is valid, except that it does not authorize a deduction for debts of the shareholder. This is a distinct and separable principle. When the shareholder has no debts to deduct, the law provides a mode of assessment *for him*, which is not in conflict with the act of Congress, and the law in that case can be held valid. Under the decision in *Austin* v. *The Aldermen*, it is valid as to him.

If he has debts to be deducted, the case of *People* v. *Weaver* (100 U. S. 539) shows that in taking the steps which this court has held he may take, he can secure that deduction, and when secured the rest of the law remains valid. In other words, in such a case, so much of the law as conflicts with the act of Congress in the given case is held invalid, and that part of the State law which is in accord with the act of Congress is held to be the measure of his liability. There is no difficulty here in drawing the line between those cases to which the statute does not apply and to those to which it does, between the cases in which it violates the act of Congress and those in which it does not. There is, therefore, no necessity of holding the statute void as to all taxation of national bank shares, when the cases in which it is invalid can be readily ascertained on presentation of the facts.

It follows that the assessors were not without authority to assess national bank shares; that where no debts of the owners existed to be deducted the assessment was valid, and the tax paid under it a valid tax. That in cases where there did exist such indebtedness, which ought to be deducted, the assessment was voidable but not void. The assessing officers acted within their authority in such cases until they were notified in some proper manner that the shareholder owed just debts which he was entitled to have deducted.

If they then proceeded in disregard of the act of Congress, the assessment was erroneous, and the case of *People* v. *Weaver* (*supra*) shows how that error could be corrected.

. The case before us shows no error in any case but that of Williams, and in that case he has obtained the judicial decision of this court, that the tax he paid was illegally exacted from him. Nor do the facts of his case raise the question whether in a case where the debts of the shareholder do not equal the assessors' value of his shares, the tax is wholly erroneous, or only so much as represent the assessment of his indebtedness that should have been deducted, for his affidavit was that his debts equalled the value of his bank shares. Nor do the findings of fact raise the question whether, without making affidavit and demand on the assessors, a suit can be maintained to recover, when such indebtedness actually existed; for he did make affidavit and demand, and no other taxpayer has shown any such notice or demand, or that he had any indebtedness to be deducted. There is neither finding of fact nor averment in the pleadings on either point as to any other assignors of plaintiff than Williams. It results from these considerations that the judgment of the Circuit Court will be reversed, and that on the finding of facts judgment will be rendered for the plaintiff on the fourth count for the amount of the tax paid by Williams, with interest, and on all the other counts for defendants.

*It is so ordered.*

MR. JUSTICE BRADLEY dissented.

MR. JUSTICE MILLER delivered, at a subsequent day of the term, the further opinion of the court.

Since the opinion in this case was delivered a suggestion has been made to modify the order of the court for judgment so far as to permit a trial in the Circuit Court on issues not decided by that court in the former trial.

The conclusions of law found by the Circuit Court, if sound, disposed of the whole case, and the facts found were sufficient to meet that view. As our opinion differed in one important point from that on which the Circuit Court acted, it became a question whether the facts found were still sufficient to dispose of the whole case.

In a bill of exceptions, signed by the judge and found in the

record, it is said: "There was evidence given in the case upon the subject of other allegations contained in the complaint, but the court did not pass upon such allegations, as the following admission and the decision of the court herein duly show." Then follows a stipulation, signed by counsel for each party, that the case was decided solely upon the invalidity of the New York statute, and that other allegations contained in the complaint had not been passed on.

Under these circumstances we should have little difficulty in directing the court below to grant a new hearing as to such issues, if we could find in the record any material issue in regard to which the court made no finding.

Attention has been called to the following language, which is a part of each count in the complaint: —

"And the plaintiff also says, upon information and belief, that the assessment of said shares of stock in said banking association by said board of assessors was at a greater rate than was assessed by said board of assessors upon shares of stock in a bank organized under the laws of the State of New York, located in said sixth ward, and was at a greater rate than was assessed by said board upon other moneyed capital in the hands of individual citizens of the State of New York, and that for these reasons said assessment of said shares of stock, and the levy of tax thereunder, were illegal and void."

If this is a *sufficient* allegation of a distinct ground of recovery, it seems just that the plaintiff should have a hearing on it, as the defendant took issue on it and it has not been disposed of.

We have, however, much difficulty in finding a solid ground of recovery in this statement. It is divisible into two parts: 1. That the shares of the national bank were assessed at a greater rate than was assessed on shares of a bank organized under the laws of the State of New York, located in said sixth ward.

We are quite clear that the shares of the plaintiff are not relieved from taxation because a single bank of the State has been favored by mistake or by intention.

For errors of this kind the statutes of New York provide the correction, which should be taken in time, and we should

be very reluctant to hold that, when it has been shown that a single bank or a single individual has been taxed less than he should be, all other taxes, however just, are thereby invalidated.

That the assessment of the shares of the Exchange Bank " was at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens of the State of New York."

If by this it is supposed that a few individual instances may be shown of partial assessments favoring citizens as compared with the national banks, we think it is erroneous. But if it is intended to allege that apart from the question of the right of the shareholder to deduct for his debts — a question which, in this case, *was disposed of* and was in issue — it can be proved that the assessors habitually and intentionally, or by some rule prescribed by themselves, or by some one whom they were bound to obey, assessed the shares of the national banks higher in proportion to their actual value than other moneyed capital generally, then there is ground for recovery, and a hearing as to that should be granted.

As we have said, it may be well doubted if plaintiff intended to allege this, or to rely on proving it.

But as it is a question of pleading under the New York code, and as no injustice can occur by leaving the matter to the court below, the judgment will be so far modified as to permit the court below, in its discretion, to hear evidence on that point, and, if necessary, to allow an amendment of the pleading to present it properly ; and it is

*So ordered.*