## PIONEER TELEPHONE & TELEGRAPH CO. v. STATE *et al.*

No. 1827. Opinion Filed October 22, 1912.

(127 Pac. 1073.)

1. **TELEGRAPHS AND TELEPHONES—Police Regulations—Telephone Rates.** Power on the part of an incorporated city or town to fix municipal telephone rates can only be derived from the Legislature by express grant or by necessary implication from powers expressly granted.

    (a) The Legislature did not, by subdivision 20 of section 512 of Wilson's Rev. & Ann. St. 1903, grant to the city of Oklahoma City the power of fixing those rates.

2. **SAME.** Where a municipality with no power to fix municipal telephone rates, by ordinance pursuant to subdivision 20 of section 512 of Wilson's Rev. & Ann. St. 1903, granted to a telephone company the right to occupy and use its streets and public ways, subject to certain police regulations, and by section 9 of said ordinance fixed municipal telephone rates, **held,** that said section to that extent is void, although accepted and acted upon between the parties in interest, and is not protected by article 9, sec. 18, of the

Constitution, so as to prevent the Corporation Commission from establishing another or different rate pursuant to the same article and section.

(Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

Appeal by the Pioneer Telephone & Telegraph Company from an order of the Corporation Commission imposing a fine for violation of a prior order of the Commission. Affirmed.

*S. H. Harris* and *J. R. Spielman,* for plaintiff in error.

*Chas. West, Chas. L. Moore,* and *Jas. S. Twyford,* for defendants in error.

TURNER, C. J.    On July 16, 1906, there was passed by the city council of the city of Oklahoma City, and approved by the mayor the next day, ordinance No. 625.    Section 1 provided:

"That the right of way be and the same is hereby granted to the Pioneer Telephone & Telegraph Company, its successors and assigns, to erect and maintain lines of poles and posts, mains and manholes and wires along, in, and through, under and across the public streets, alleys, avenues, bridges and viaducts in the city of Oklahoma City, for the purpose of supplying citizens of said city and the public with communication by telephone or other improved electrical devices and for the purpose of operating a telephone exchange and telephone lines, such use to be and continue upon the terms and conditions hereinafter provided."

Section 2, after providing for the location of the poles, stipulated:

"This grant is made and is to be enjoyed subject to any proper and reasonable rules, regulations and ordinances of a public nature, as the mayor and city council are authorized to make, not destructive to the rights herein granted."

And it was further provided that the telephone company within one year from the date thereof should inclose all wires, with certain exceptions, within and without the fire limits. Section 3 provided that the right of use granted should not be exclusive, etc.    Section 4 provided additional restrictions with reference to the placing of wires so as to have them least interfere with other public use of the streets, etc., and that they should

not be unnecessarily obstructed. It was also provided that the grantee would hold the city harmless for any liability arising out of any act of negligence or omission of the grantee. Section 5 provided that in consideration thereof the telephone company would allow the city certain uses of their property for municipal purposes. Section 6 recited that, in further consideration of the city's patronage, the telephone company agreed to furnish to the city ten free telephones and certain other connections with exchange for city purposes at $1 per month per telephone, to be located by order of the city, and further provided that the city might have free use of the system in case of fire, riot, etc. In section 7 it was agreed on the part of the city that the use of the poles of the company, as stated, and the free reduced rate telephones offered shall be given by said company in place and instead of any city income, license tax, or unusual levy which the city might otherwise demand, etc. Section 8 provided that the company shall remove its wires after receipt of request from the mayor to permit the moving of houses, etc. Section 9 of said ordinance, among other things, provided:

"The maximum rate to be charged by the grantee for exchange service shall be dependent upon the total number of telephones within the city limits, and platted additions thereto connected with the local Oklahoma City exchange to which exchange service is given, as follows: (setting them forth)."

It is unnecessary to recite the other sections.

Thereafter, while appellant was doing business under said ordinance, on October 12, 1908, the Corporation Commission entered the following order, No. 101:

"It is ordered that no person, or persons, firms, company or corporation doing a transmission business by telephone for hire in the state of Oklahoma shall charge a greater or different rate for service or similar service in effect on October 12, 1908, without first having made application to the Corporation Commission therefor, and submitting to the commission the schedule of the proposed change, which, before taking effect, shall have the approval of the commission. This order shall be in full force and effect on and after November 3, 1908."

On July 17, 1908, the Burrows Oil Company, one of the subscribers of the appellant company in said city, filed its complaint against said company, in effect:

"That the defendant, contrary to order No. 101 of the Corporation Commission of Oklahoma, have changed their rates which were in effect October 12, 1908, so that now we have to pay four dollars and ten cents monthly where we October 12, 1908, paid three dollars and seventy-five cents, all of which appears on receipted bills attached."

Later defendant appeared and filed answer, in effect an admission of the charge, and stood on its right so to do under said ordinance, which the commission, in effect, held was no defense, and fined it $100 and costs "for violating said order No. 101 and raising its telephone rates in Oklahoma City without first having obtained an order from the commission authorizing such raise." To reverse said order, which is No. 235, defendant brings the case here.

There can be no question of our jurisdiction to review said order and determine whether the commission had the power to make the order violated. *A., T. & S. F. Ry. Co. v. State et al.,* 31 Okla. 43, 119 Pac. 961; *G., C. & S. F. Ry. Co. v. State, ante,* 125 Pac. 1103.

The case turns upon the question of whether the commission had such power. If by subdivision 20 of section 512 of Wilson's Rev. & Ann. St. 1903, the Legislature granted to the city the governmental power of fixing and regulating municipal telephone rates, the effect of so doing in this instance was to suspend, during the life of the ordinance relied upon, the governmental power of fixing and regulating those same rates by the Corporation Commission, and order No. 101 is void. If, however, no such power was thereby granted, section 9 of the ordinance relied on is void and order No. 101 is valid and enforceable.

In *Home Tel. Co. v. Los Angeles,* 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176, the court said:

"The power to fix, subject to constitutional limits, the charges of such a business as the furnishing to the public of telephone service, is among the powers of government, is legislative in its

character, continuing in its nature, and capable of being vested in a municipal corporation. * * * The surrender, by contract, of a power of government, though in certain well-defined cases it may be made by legislative authority, is a very grave act, and the surrender itself, as well as the authority to make it, must be closely scrutinized. No other body than the supreme Legislature (in this case, the Legislature of the state) has the authority to make such a surrender unless the authority is clearly delegated to it by the supreme Legislature. The general powers of a municipality or of any other political subdivision of the state are not sufficient. Specific authority for that purpose is required. This proposition is sustained by all the decisions of this court which will be referred to hereafter, and we need not delay further upon this point. It has been settled by this court that the state may authorize one of its municipal corporations to establish, by an inviolable contract, the rates to be charged by a public service corporation (or natural person) for a definite term, not grossly unreasonable in point of time, and that the effect of such a contract is to suspend, during the life of the contract, the governmental power of fixing and regulating the rates. *Detroit v. Detroit Citizens' Street R. Co.,* 184 U. S. 368, 382 [22 Sup. Ct. 410], 46 L. Ed. 592, 605; *Vicksburg v. Vicksburg Waterworks Co.,* 206 U. S. 496, 508, 27 Sup. Ct. 762, 51 L. Ed. 115, 1160. But for the very reason that such a contract has the effect of extinguishing *pro tanto* an undoubted power of government, both its existence and the authority to make it must clearly and unmistakably appear, and all doubts must be resolved in favor of the continuance of the power."

In *State ex rel. Garner v. Missouri & K. Telephone Co.,* 189 Mo. 83, 88 S. W. 41, the body of the opinion says:

"The regulation of prices to be charged by a corporation intrusted with a franchise of a public utility character is within the sovereign power of the state that grants the franchise or that suffers it to be exercised within its borders, and that power may be with wisdom and propriety conferred on a municipal corporation. * * *"

In that case, in the first paragraph of the syllabus, it was held:

" * * * That, while the enactment by the city of an ordinance fixing the maximum rate to be charged by telephone companies for telephone service in the city was expressly authorized by the charter, the state had not delegated to the city the power

to exercise such authority in framing its charter, and the ordinance was void."

In *State ex rel. Wisconsin Telephone Co. v. City of Sheboygan,* 111 Wis. 23, 86 N. W. 657, the court, speaking of this power, said that it was inherent in the state and a necessary attribute of sovereignty; that it does not pass to a mere subdivision of government except by express grant or by necessary implication from other powers granted; that every citizen holds his property subject to the proper exercise of this power, either by the state Legislature direct or by a public or municipal corporation to which the Legislature may delegate it. Citing 1 Dill. Mun. Corp. sec. 141. Speaking to the point there in question, the court said:

"No express authority is given the city to regulate charges for telephone service, nor is there any express grant of power from which such authority can necessarily be implied. Construing the charter and the statute in the light of the rules of law stated, the city has authority to exercise its police power to protect the public from unnecessary obstructions, inconvenience, and danger and to determine in what manner the relator may erect its poles so as to accomplish this result. *Michigan T. Co. v. Benton Harbor,* 121 Mich. 512 [80 N. W. 386, 47 L. R. A. 104]. It has no authority to impose other conditions. That power rests in the Legislature. The power to regulate charges was not included in or incidental to the power to regulate the manner of using streets. There is not the remotest relation between them."

Relying on such grant of governmental power by the Legislature to the city, appellant cites subdivision 20 of section 512, Wilson's Rev. & Ann. St. 1903, where it is claimed cities of appellant's class are vested with power "to authorize the construction and maintenance of street railways, water mains and water pipes, and gas mains and gas pipes, electric light and telephone wires, along or through the streets and alleys within the corporate limits and to grant franchises and rights to persons, associations or corporations for such purpose, and to regulate the same, but no exclusive rights shall be granted for any such purpose. The street may be granted on the same terms to all companies desiring to compete with each other in the business of

furnishing gas, electricity, telephone accommodations, electric lights, water or street railway accommodations, and all shall be subject to the reasonable regulations by ordinance, which ordinance may be altered and changed at the pleasure of the council"—and insists that the power to fix said rates was thereby granted to the city; and that the right to change the rate from the lower to the higher, and to charge the rates complained of, was granted by the city to appellant under the municipal franchise contained in said ordinance; and that the same is protected by that part of article 9, sec. 18, of the Constitution, which reads:

"That nothing in this section shall impair the rights which have heretofore been or may hereafter be conferred by law upon the authorities of any city, town or county to prescribe rules, regulations or rates of charge to be observed by any public service corporation in connection with any services performed by it, under a municipal or county franchise, granted by such city, town or county, so far as such services may be wholly within the limits of the city, town or county granting the franchise."

Assuming, but not deciding, that subdivision 20 of section 512, *supra,* is applicable to cities of the first class, we cannot agree with appellant that thereby the power to fix telephone rates was granted by the Legislature to the city. All that was thereby granted to the city pertinent to this case is apparent on its face, which is the power "to authorize the construction and maintenance of * * * telephone wires along or through the streets and alleys within the corporate limits and to grant franchises and rights to * * * corporations for such purposes and to regulate the same * * *"; the street to be granted on the same terms to all companies desiring to compete with each other in the business of furnishing telephone accommodations, and all to be subject to the reasonable regulation by ordinance, which ordinance may be altered and changed at the pleasure of the council.

The power to authorize the construction and maintenance of telephone wires along or through the streets and alleys and to grant franchises and rights to corporations for such purposes, whatever else it means, certainly contains no grant of power to the municipality to fix telephone rates by franchise or otherwise,

and as part consideration therefor, as is here attempted. All the grant of power therein contained that we can see is the power to grant by franchise the right to construct and maintain telephone wires along the streets and alleys of the municipality under such terms of police regulations as may be from time to time ordained by the city. This being true, it follows that the right to automatically increase the rates in the manner sought to be fixed by section 9 of the ordinance—that is, for every 1,000 increase in telephones—does not exist, and that the attempt to grant this right in said section, being a nude pact between the city and the appellant, is binding on neither, and certainly not on the state.

*Farmer v. Telephone Co.*, 72 Ohio St. 526, 74 N. E. 1078, was error to the circuit court of Columbiana county. The action below was brought by plaintiffs in error in the court of common pleas to obtain a mandatory injunction requiring defendant in error to place a telephone instrument in their place of business, pursuant to the terms specified and rates fixed by an ordinance of the city of Salem, by which the company was granted its rights to erect its poles, wires, etc., in the streets of that city. The material part of the ordinance was set out in the report of the case and proposed to fix the rates, as here. The first question before the appellate court was whether the contract as to the rates was within the power of the council to make, and, if not, was the defendant company estopped to set up as a defense that want of power. The first question was answered in the negative by sections 3461 and 3471 of the Revised Statutes set forth in the opinion. Upon the second the court said:

"It follows from what has preceded that the municipality possessed nothing in the way of a valuable right to bestow upon the company. Hence the promises of the company to do what it was not, and could not, by the city be required to do was a naked promise, without consideration. It therefore fails as a contract, and it is difficult to see how Farmer & Cotz could take advantage of a nude pact to raise an estoppel—a pact to which they were in no wise parties or privies in the eye of the law, and against a party with whom they had no contract or other legal relations whatever themselves."

In the headnote it is said:

"Telephone companies organized in this state obtain power to construct their lines along the streets and public ways of municipal corporations from the state by virtue of sections of the Revised Statutes (3454 to 3471—8, inclusive), and not from the municipal authorities. The latter have the power, under section 3461, to agree with such companies as to the mode of use, and upon compensation for such use, but not beyond what may be necessary to restore the streets to former state of usefulness. They have not power to exact or receive compensation by way of free telephone service for themselves or for citizens, or to fix rates for telephone charges. Where such power to so obtain free service and fix rates is attempted to be exercised by the passage of an ordinance incorporating such provisions, the company will not be required to adhere to them by a court of equity by mandatory injunction, even though it be shown that the rates agreed upon and incorporated in the ordinance were so fixed at the solicitation of the company, and that the company thereby obtained a benefit which it would not have otherwise obtained in a mode of use of the streets more beneficial to it and more inconvenient to the public."

Having therefore reached the conclusion that by subdivision 20 of section 512, Wilson's Rev. & Ann. St. 1903, the Legislature granted no power to the city of Oklahoma City to fix and regulate municipal telephone rates, we are of opinion that its attempt so to do in section 9 of the ordinance, *supra,* did not suspend, during the life of the ordinance relied upon, the governmental power of fixing and regulating the rates of this defendant by the Corporation Commission, pursuant to the fourth subdivision of article 9 of section 18 of the Constitution, and that order No. 101 is valid and subsisting, and that the fine imposed by order No. 235 of the commission must be sustained.

The remaining questions sought to be raised may be disposed of by a quotation from *South McAlester-Eufaula Telephone Co. v. State ex rel.,* 25 Okla. 539, 106 Pac. 967, where Mr. Justice Kane, speaking for the court, said:

" * * * It is obvious that the line of authorities relied on by counsel for defendant in error to the effect that, when a municipality by ordinance duly enacted has granted a telephone or telegraph company the right to occupy and use its streets and public ways, and fix and settle the manner of such occupancy

and use, and the privileges thereunder granted are accepted by the company and acted upon, the grant and acceptance becomes a binding contract between such company and the municipality, the obligations of which cannot be avoided or impaired, are not in point."

Order No. 235 of the Corporation Commission is affirmed.

All the Justices concur.