## PIONEER TELEPHONE & TELEGRAPH CO. v. STATE.

No. 5340.    Opinion Filed January 13, 1914.

On Rehearing, February 24, 1914.

(138 Pac. 1033.)

1.    **TELEGRAPHS AND TELEPHONES—Corporation Commission—Jurisdiction—Action for Refund of Excess Charges.** The Corporation Commission of this state has jurisdiction to entertain an action instituted in the name of the state, through the law officer designated by law to appear before said Commission, to recover from a transmission company the refund of excess charges which were collected by it in violation of the rates fixed by said Commission.

    (a)    Such action in the name of the state for the recovery of such refunds for the purpose of the same being distributed to the persons entitled thereto is a police regulation incident to the effective regulation and control of public service corporations by the agencies of the state.

2.    **STATUTES—Local or Special Law—Corporation Commission—Authority to Adjust Controversy.** The act of February 10, 1913 (Laws 1913, c. 10), entitled "An act conferring authority upon the Corporation Commission to adjust controversies between parties growing out of refunds for public service; to require all refunds to be turned over to the Commission; to determine the amount of refund, and to whom due; and declaring an emergency"—is not repugnant to section 46o of article 5 (section 123, Williams' Ann. Ed.) of the Constitution of this state.

3.    **CONSTITUTIONAL LAW—Scope of Review—Constitutional Question.** This court will not listen to the objection to the constitutionality of an act by a party whose right it does not affect, and who has no interest in defeating it.

4.    **STATUTES—Invalidity in Part—Effect.** It is only when different clauses of an act are so dependent upon each other that it is evident the Legislature would not have enacted one of them without the other, as when the two things provided are necessary parts of one system, that the whole act will fall on account of the invalidity of one clause.

5.    **JURY—Proceedings Before Corporation Commission—Jury Trial.** Appellant is not entitled to a trial by jury in such proceeding before the Corporation Commission.

6.    **TELEGRAPHS AND TELEPHONES—Order of Corporation Commission—Conclusiveness.** A rate having been fixed by the Corporation Commission, and the party affected neither (1) appealed from such order, nor (2) presented an application to the Commission to have same set aside, nor (3) invoked equitable powers to

enjoin the enforcement of the same in an action in the name of the state by its proper law officer to recover the amount paid in excess of the fixed charges, such party may not plead, in defense thereto, that the charge fixed was unjust and unreasonable and confiscatory.

7. **SAME—Remedies Against.** If said order was invalid, it was permissible for appellant to directly challenge same (1) by appeal, (2) by application to the Commission to set same aside, and (3) by an action in equity to restrain its enforcement.

8. **JUDGMENT—Res Judicata—Effect.** A regular judgment, whilst it remains in force, is conclusive as to every matter that might have been given in evidence or pleaded to the action in which it was rendered, except matters growing out of separate and independent causes of action, which might have been pleaded in offset.

9. **TELEGRAPHS AND TELEPHONES—Excessive Charges—Recovery—Voluntary Payment.** The payment of excess rates for phone services demanded by the transmission company in violation of the fixed orders of the Corporation Commission, which had neither been appealed from nor in any way superseded or suspended, is not voluntary in the sense that the same might not be recovered back from the transmission company by a proper party.

(Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

Petition by the State to recover from the Pioneer Telephone & Telegraph Company the refund of excess charges. From an order of the Corporation Commission for petitioner, the Company appeals. Affirmed, and rehearing denied.

*Harris & Nowlin, J. W. Gleed, J. L. Hunt,* and *J. R. Spielman,* for appellant.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., and *E. C. Patton,* for the State.

WILLIAMS, J. Appellant maintains a telephone system in Oklahoma City, a city of the first class, under an ordinance passed July 16, 1906, known as ordinance No. 625, entitled "An ordinance granting to the Pioneer Telephone & Telegraph Company, its successors and assigns, the right to construct, operate and maintain telephone lines in the city of Oklahoma City, Oklahoma Territory, and repealing ordinances Nos. 133 and 244, and all other ordinances and parts of ordinances in conflict there-

with." For the purpose of this case it will be assumed that said municipality had authority to pass said ordinance granting said franchise. *Pioneer Telephone & Telegraph Co. v. State,* 33 Okla. 724, 127 Pac. 1073; *Oklahoma Railway Co. v. Powell et al.,* 33 Okla. 737, 127 Pac. 1080.

After the erection of the state, to wit, on October 12, 1908, the Corporation Commission made and entered an order which in part provides that:

"No person, or persons, firm, company, or corporation doing a transmission business by telephone for hire in the state of Oklahoma shall charge a greater or different rate for service, or similar service in effect on October 12, 1908, without first having made application to the Corporation Commission therefor, and submitting to the Commission a schedule of the proposed change, which before taking effect shall have the approval of this Commission."

On July 28, 1909, the Burrows Oil Company, one of the appellant's patrons, at Oklahoma City, having filed a complaint against it for violation of said order, citation was issued, and on a hearing appellant was adjudged guilty of contempt. Appellant's contention was that said ordinance fixed the phone rates to be charged and that the Commission was without authority to interfere.

In *Pioneer Telephone & Telegraph Co. v. State, supra,* it was held that said municipality, by virtue of said ordinance granting said franchise, did not have power to fix rates to be charged by appellant for use of its telephones in said city, and affirmed the order adjudging appellant guilty of contempt. Appellant in this proceeding seeks to challenge the validity of the order of the Commission made on October 12, 1908, in that it was made by said Commission without authority, and further that it was void. That the Commission had such power and the order was not void is now *res adjudicata. Pioneer Telephone & Telegraph Co. v. State, supra.* Even if such was not the case, the Commission had power to make said order. Section 18, art. 9 (section 234, par. 3, Williams' Ann. Ed.), of the Constitution of this state. That said order was made without investigation as to the rates charged and was therefore arbitrary and

unreasonable, that would not make the order void, but voidable, and such question could only be raised by an appeal or other means of direct proceeding, and not in a collateral attack, as is here sought to be made; the appellant having had the notice provided for by article 9, sec. 18, of the Constitution of this state. *Pioneer Telephone & Telegraph Co. v. State, supra;* section 24, art. 9 (section 242, Williams' Ann. Ed.), of the Constitution of this state.

The state, through its proper law officer, filed a petition before the Corporation Commission, seeking to recover from appellant the refund of excess charges which were collected by appellant from its subscribers in Oklahoma City after the said order of October 12, 1908, was entered. Appellant entered its appearance and contested the granting of said relief by the Commission. Judgment was entered by it against appellant for the amount of the excess charges, as shown and indicated by appellant under its sworn report to said Commission, to wit, $60,057.20. Appellant made no contention as to the amount of the excess charges, but controverted the power of the Commission to grant the relief (1) on the ground that it was without authority; (2) that such action could not be maintained in the name of the state; and (3) that the Act of February 10, 1913, entitled "An act conferring authority upon the Corporation Commission to adjust controversies between parties growing out of refunds for public service; to require all refunds to be turned over to the Commission; to determine the amount of refund and to whom due; and declaring an emergency" (Sess. Laws 1913, c. 10)—was repugnant, not only to the state, but also the federal Constitution.

Section 1, art. 7 (section 186, Williams' Ann. Ed.), of the Constitution of this state, provides that:

"The judicial power of this state shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, district courts, county courts, courts of justices of the peace, municipal courts, and such other courts, commissions or boards inferior to the Supreme Court, as may be established by law."

The Corporation Commission, as created by article 9, is a body with, so far as the regulation of public service corporations is concerned, executive, judicial, and legislative powers.

By virtue of said section 1, art. 7, and the provisions of article 9, the Corporation Commission has authority to exercise all of these powers with a view of carrying out the general purposes for which the Corporation Commission was created, to wit, to regulate public service corporations and provide against abuse, discrimination, and excessive charges and for the refunds thereof. Anything that is in furtherance of that purpose is within the contemplated view of its creation and is not in violation of section 1, art. 4, of the Constitution. Nor does said act violate section 1 of article 4 (section 50, Williams' Ann. Ed.) of the Constitution of this state. Section 1, art. 7 (section 186, Williams' Ann. Ed.); section 18, art. 9 (section 234, Williams' Ann. Ed.); section 21, art. 9 (section 239, Williams' Ann. Ed.); section 19, art. 9 (section 237, Williams' Ann Ed.); section 35, art. 9 (section 253, Williams' Ann. Ed.).

. We conclude that the Legislature was authorized to pass the act "conferring authority upon the Corporation Commission to adjust controversies between parties growing out of refunds for public service; to require all refunds to be turned over to the Commission; to determine the amount of refund and to whom due." Under said act the Corporation Commission is authorized to entertain actions instituted before it in the name of the state for such purposes.

Section 18, par. 3, of article 9 (section 234, Williams' Ann. Ed., par. 3), of the Constitution of the state, authorizes the Commission to prescribe or fix rates, charges, or classifications of traffic, and orders, rules, and regulations of transmission companies in the state, but requirement is made that at least ten days' notice of the time and place of the contemplated action in the premises shall be given by the Commission that reasonable opportunity shall be afforded such companies to appear and introduce evidence and be heard thereon.

The order under which the action instituted is based was made by virtue of this provision. When the Commission made the order it was at the state's initiative, and therefore the state is a party to the proceeding. The powers of sovereignty were set in motion at the instance of the state for the benefit of the

public.   Had any of the companies affected by said order appealed, it would have been essential for them to make the state the appellee.   Had the appellant appealed from the order of October 12, 1908, and executed a supersedeas bond to cover the refund of excess charges in the event the appeal was finally decided against the appellant, and the final decision of such appeal had been against the appellant, it would have been the duty of the appellant to promptly refund, to the parties entitled to such excess charges, the same in such manner and under such methods of distribution as may have been prescribed by the Corporation Commission.   The supersedeas bond must be made payable to the state.   Section 21, art. 9 (section 239, Williams' Ann. Ed.), Const. of this state.   In such case obviously an action must be instituted in the name of the state by its proper law officer.   The refunds are to be collected and distributed "in such manner and through such methods of distribution as may be prescribed by the Commission or by law."

In the *State of Nebraska v. Pacific Express Co.,* 80 Neb. 823, 115 N. W. 619, 18 L. R. A. (N. S.) 664, there was a violation of the statute limiting the rates to be charged by virtue of section 3, ch. 91, Laws 1907, and it was held the state, through the Attorney General, its designated officer in the Supreme Court, may maintain an action in equity to enjoin common carriers, whose rates are fixed by law, from violating the terms of the statute and exacting unlawful and excessive rates and charges; and it was further held that the jurisdiction conferred upon the Supreme Court of that state by the Constitution, "in all civil cases in which the state shall be a party," is not confined to cases in which the state has a mere pecuniary interest, but may extend to all cases in which the state, through its proper officers, seeks the enforcement of public right or the restraint of public wrong.   See, also, authorities cited in footnote to *State of Nebraska v. Pacific Express Co.,* 18 L. R. A. (N. S.) 664.   Section 6 of the Nebraska act provided that:

"The Nebraska State Railway Commission, and if there be no Commission, then the Governor with the assistance of the

Attorney General, are hereby empowered to enforce the provisions of this act." (Laws 1907, c. 91.)

The bringing of the action in the name of the state for the recovery of the refunds for the purpose of the same being distributed to the persons entitled to the same is a police regulation incident to the effective regulation and control of public service corporations and the exercise of such power. The Act of February 10, 1913, *supra* (Sess. Laws 1913, pp. 10, 12), constituted the Corporation Commission a court of record with jurisdiction to entertain such action. The fact that a supersedeas bond was not given did not deprive the state of the right to maintain such action. This right exists by virtue of article 9 of the Constitution and not by the Act of February 10, 1913. *County of Douglas et al. v. Moores et al.,* 66 Neb. 284, 92 N. W. 199.

If this conclusion is incorrect, the regulation of public service corporations provided for in this Constitution in many instances would neither be adequate nor effective. It is the duty of this court to give effect to the will of the people, as expressed in its organic and statutory law, unless it is made manifest, beyond a reasonable doubt, that the same is in conflict with some provision of the federal Constitution. We are not so convinced, and our judgment should sustain the law.

Contention is made that the Act of February 10, 1913, violates section 46*o* of article 5 of the Constitution, which provides:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law  *  *  *  regulating the practice or jurisdiction of, or changing the rule of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments, or prescribing the effect of judicial sales of real estate."

The same is neither a local nor a special law. *Coyle v. Smith,* 28 Okla. 121, 113 Pac. 944.

It is urged that section 5 of said act, wherein it provides that "all refunds not paid out by the Commission, or unclaimed, within two years from the time the money is received by the Commission shall be turned over to the State Treasurer," is unconstitutional

and void. This objection availeth the appellant nothing. If the state be authorized to maintain this action on behalf of the parties in its own name for the benefit of the parties entitled to the refund, its recovery, when settled by the appellant, would exonerate it against any individual claim made by the parties entitled to said refunds. It is settled that a court will not listen to an objection to the constitutionality of an act by a party whose right it does not affect, and who therefore has no interest in defeating it. *Albany County Sup'rs v. Stanley*, 105 U. S. 305 26 L. Ed. 1044; *Clark v. Kansas City*, 176 U. S. 114, 20 Sup. Ct. 284, 44 L. Ed. 392; *Cram v. C., B. & Q. R. Co.*, 85 Neb. 586, 26 L. R. A. (N. S.) 1028, 19 Ann. Cas. 170, and authorities therein cited; *Rea v. State ex rel. Board of Commissioners of Lincoln County et al.*, 29 Okla. 708, 119 Pac. 235; *Norris et al. v. Cross*, 25 Okla. 287, 105 Pac. 1000; *Threadgill v. Cross*, 26 Okla. 403, 109 Pac. 558, 138 Am. St. Rep. 964.

Further, if said section were to fall, it does not appear to be so connected in subject-matter with the other provisions of said act, and they so dependent upon each other, and operating together for the same purposes, or otherwise so connected together in meaning that it cannot be presumed that the Legislature would have passed the one without the other. It is only when different clauses of an act are so dependent upon each other that it is evident the Legislature would not have enacted one of them without the other, as when the two things provided are necessary parts of one system, that the whole act will fail on account of the invalidity of one clause. When there is no such connection and dependency, the act will stand, though different parts of it are rejected. *In re County Com'rs of Counties Comprising Seventh Judicial District*, 22 Okla. 435, 98 Pac. 557.

A majority of this court are of the opinion that appellant is not entitled to a trial by jury in such proceeding, which is had by virtue of a police regulation incident to the exercise of powers granted to the Corporation Commission by the Constitution.

Further, as for the contention that in this action before the Corporation Commission appellant was entitled to plead and prove

that the rates so fixed by the order of October 12, 1908, were un-
just and unreasonable and confiscatory, and for that reason the
state was not entitled to prevail in this action to recover the re-
funds, such defense is not permissible in this proceeding. Such
rates having been fixed and not having been challenged directly by
appeal or otherwise, such question in this action is collateral.

Three remedies were available to the appellant by which the
validity of said order might be challenged: (1) By appeal as
provided in section 20 of article 9 (section 238, Williams' Ann.
Ed.) of the Constitution; (2) by application made directly to
the Commission to set aside order (section 18 of article 9 [sec-
tion 234, Williams' Ann. Ed.] of the Constitution); and (3) by
an action in equity to restrain its enforcement. As a matter of
practice the first two remedies should be sought before the last
remedy is resorted to. *Prentiss v. Atlantic Coast Line,* 211 U. S.
210, 29 Sup. Ct. 67, 53 L. Ed. 150.

Section 6, art. 2 (section 14, Williams' Ann. Ed.), of the
Constitution of this state, provides that:

"Courts of justice of the state shall be open to every person,
and speedy and certain remedy afforded for every wrong and
for every injury to person, property, or reputation; and right
and justice shall be administered without sale, denial, delay, or
prejudice."

By this provision the right of the appellant to maintain a
proceeding to invoke the equitable powers of a court to enjoin
its enforcement is guaranteed. True, section 20 of article 9
(section 233, Williams' Ann. Ed.) provides that:

"No court of this state (except the Supreme Court, by way
of appeal as herein authorized) shall have jurisdiction to review,
reverse, correct, or annul any action of the Commission within
the scope of its authority, or to suspend or delay the execution
or to suspend or delay the action or operation thereof, or to en-
join, restrain, or interfere with the Commission in the perform-
ance of its official duties"

—but in view of the holding of the Supreme Court of the United
States in *Prentiss v. Atlantic Coast Line, supra,* this provision
cannot be construed as denying the remedies guaranteed by sec-
tion 6 of the Bill of Rights. Section 20 was borrowed from the

Constitution of Virginia (see annotation, section 238, Williams' Ann. Ed.); and in the Prentiss case it was held that said section did not have the effect of preventing an aggrieved party from having an independent remedy in a court exercising equity powers in order to challenge the validity of such order. The Prentiss case is controlling authority in the construction of such provisions, as its holding was with reference to its being in violation of the federal Constitution. The Supreme Court of this state, when exercising the authority granted it by said provision of said section 20, sits in a legislative or administrative capacity. Said provision must be construed as applying to courts in this state, when by special grant of authority by the Constitution they sit in a like capacity. *A., T. & S. F. Ry. Co. v. Love,* 23 Okla. 192, 99 Pac. 1081; *A., T. & S. F. Ry. Co. v. State et al.,* 23 Okla. 510, 101 Pac. 262. It is our duty to harmonize these provisions and to permit them both to stand, if it is reasonably possible; it being a settled rule of construction that where an act is susceptible of two constructions, one of which would render it valid and the other invalid, that must be adopted which sustains the act. *Beaty v. State ex rel. Lee,* 35 Okla. 677, 130 Pac. 956.

Following the rule laid down in the Prentiss case, we have no other alternative than to hold that, by virtue of section 6 of the Bill of Rights, the direct proceeding in a court exercising equity powers in the district and superior courts of this state was available to appellant to challenge the validity of the order.

Section 24 of article 9 (section 242, Williams' Ann. Ed.) of the Constitution of this state provides that in no " * * * collateral proceeding shall the reasonableness, justness, or validity of any rate, charges, classification of traffic, rule, regulation, or requirement, theretofore prescribed by the Commission, within the scope of its authority, and then in force, be questioned."

Further, the reasonableness, justness, and validity of such rate, at least at the time it was prescribed, is an adjudicated fact against appellant's contention. *P. T. & T. Co. v. State,* 33 Okla. 724, 127 Pac. 1073; *Pettis et ux. v. McLain et al.,* 21 Okla. 521, 98 Pac. 927; *Pratt v. Ratliff,* 10 Okla. 168, 61 Pac. 523; *Farmers'*

*State Bank of Arkansas City v. Stephenson et al.,* 23 Okla. 695, 102 Pac. 992. In the Stephenson case it is said:

"A regular judgment, whilst it remains in force, is conclusive as to every matter that might have been given in evidence or pleaded to the action in which it was rendered, except matters growing out of separate and independent causes of action which might have been pleaded in offset, and the same principle obtains in cases of judgment by confession. *Barney v. Goff et al.,* 1 D. Chip. (Vt.) 304; *Squires v. Whipple,* 2 Vt. 111."

Appellant in its brief does not contend that after such adjudication, and during the period for which said excess charges are claimed, conditions have changed.

It is further contended that the payment of the excess rates for the phones demanded by the appellant was voluntarily made and therefore no right in favor of the subscribers existed, and the action for that reason will not lie.

In *Louisiana Realty Co. v. McAlester,* 25 Okla. 726, 108 Pac. 391, it is said:

"Every man is supposed to know the law, and, if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back."

The appellant, in demanding and collecting a rate for its phones in Oklahoma City in excess of that fixed by the order of October 12, 1908, such order not having been appealed from and superseded, was acting against the laws of this state.

Section 18, art. 9 (section 234, Williams' Ann. Ed.), of the Constitution of this state, provides that:

"All rates, charges, classifications, rules and regulations adopted, or acted upon, by any such company, inconsistent with those prescribed by the Commission, within the scope of its authority, shall be unlawful and void."

Besides, what alternative did the subscribers have other than to pay the excess rate demanded, or have their phones taken out, and thereby be deprived of telephonic conveniences and communications?

The judgment in favor of the state against the appellant for excess charges or refunds will be affirmed.

All the Justices concur.

### ON REHEARING.

1.   The appellant in its petition for rehearing contends that this court erred in holding that it was not entitled to a trial by jury before the Corporation Commission, as provided by section 19, art. 2 (Bill of Rights), of the Constitution (section 27, Williams' Ann. Ed.).   In the original opinion this court held that the judicial power vested in the Corporation Commission by the terms of the Act of February 10, 1913, was within the original contemplation of the framers of the Constitution, in creating the Corporation Commission, that such power might be added within the discretion of the Legislature in order to fully regulate public service corporations and provide against abuse, discrimination, and excessive charges and to cause refunds therefor to be made, and that it was not contemplated that a jury, as required by section 19 of the Bill of Rights, should be had before the Corporation Commission.   That opinion is still adhered to.

2.   That part of section 20 of article 9 of the Constitution which provides that "no court of this state (except the Supreme Court, by way of appeals as herein authorized) shall have jurisdiction to review, reverse, correct, or annul any action of the Commission within the scope of its authority, or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the Commission in the performance of its official duties," was construed in connection with section 6, art. 2, of the Constitution, wherein it was held that said provision applied to courts in this state only when they sat in like capacity as the Supreme Court on appeal from such orders.   This holding is challenged in the petition for rehearing.   Suffice it to say that, if this construction is not correct, said excerpt from said section 20 must fall, as it would have the effect to deny the appellant due process of law, as guaranteed by the fourteenth amendment to the federal Constitution, in that it deprived said appellant of a judicial review.   In that contingency said section 6 of the Bill of Rights would remain in force, which guarantees to every person a speedy and certain remedy for every wrong and for every injury to person, property, or reputation.   Under this section

both legal and equitable jurisdiction may be invoked by· appellant for relief, unless denied by some other provision of the Constitution.  Section 24 of article 9 provides:

"The right of any person to institute and prosecute in the ordinary courts of justice, any action, suit, or motion against any transportation or transmission company, for any claim or cause of action against such company, shall not be extinguished or impaired, by reason of any fine or other penalty which the Commission may impose, or be authorized to impose, upon such company because of its breach of any public duty, or because of its failure to comply with any order or requirement of the Com-· mission; but, in no such proceeding by any person against such corporation, nor in any collateral proceeding shall the reasonableness, justness, or validity of any rate, charge, classification of traffic, rule, regulation, or requirement, theretofore prescribed by the Commission, within the scope of its authority, and then in force, be questioned."

In this action the state acts for the individual, and said section 24 specifically prohibits the reasonableness of the order upon which the action is based, being brought into the question in such action.  Said section 24 of article 9, therefore, cuts off the right of a judicial review as to the validity of said order, in an action brought to enforce the refund, but the right to invoke equity jurisdiction by the transmission company to have said order declared invalid is not denied, for such proceeding is not collateral but direct.

In *Morrill v. Morrill,* 20 Ore. 96, 25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95, it is said:

"A collateral attack on a judgment is any proceeding which is not instituted for the express purpose of annulling, correcting or modifying such decree.  12 Am. & Eng. Encyc. of Law, 147."

This identical language is also approved in *Peyton v. Peyton,* 28 Wash. 278, 68 Pac. 757.  The remedy by law not being available, that by equitable cognizance is.  A judicial review by invoking equitable powers being afforded under the provisions of this Constitution, a direct attack was available to appellant to have declared void said order of the Commission of October 12, 1908.  This constituted due process of law.  *State of Washing-*

*ton ex·rel. Oregon R. & Nav. Co. v. Fairchild et al.,* 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863.

3.   The appellant's contention that the Act of February 10, 1913, should be construed by implication to amend section 24, art. 9, of the Constitution, so as to permit the reasonableness of the order to be challenged by way of defense in an action to recover the refunds, appears not to be well founded.

The title of the act is as follows:

"An act conferring authority upon the Corporation Commission to adjust controversies between parties growing out of refunds for public. services; to require all refunds to be turned over to the Commission; to determine the amount of refund and to whom due; and declaring an emergency."

Section 1 of said act is as follows:

"The Corporation Commission is hereby vested with the power of a court of record to determine: First, the amount of refund due in all cases where any public service corporation, person, or firm, as defined by the Constitution, charges an amount for any service rendered by such public service corporation, person, or firm, in excess of the lawful rate in force at the time such charge was made, or may thereafter be declared to be the legal rate which should have been applied to the service rendered; and, second, to whom the overcharge should be paid."

Section 2 of the same act also provides:

"Upon ascertaining the amount of overcharge due from any public service corporation, person or firm, the Corporation Commission shall have authority to render judgment against such public service corporation, person, or firm, for the amount of such overcharge that may have been collected from the public in violation of any legal rate, or order of the Commission, if necessary to insure the prompt payment of the same to the Commission.   *   *   *"

Clearly this act contemplates that the validity of the right shall be tried out in other actions, to wit: ' (1) On appeal from the action of the Commission; (2) by motion before the Commission to vacate or modify the order; and (3) by a direct proceeding in equity to determine its validity.  The other sections of said act are also in harmony with this conclusion.

In the case of *In re Engelhard & Sons Co.,* 231 U. S. 646, 34 Sup. Ct. 259, 58 L. Ed. ——, it is said:

"The city was the proper party to make defendant in the suit as representative of all interested, and so throughout the whole proceedings. If we may suppose, in a case like the present one, there can be a distinction between the public interest and private interest, the subscribers of the company being the public, the representation of both interests was adequately fulfilled. It was in consequence of the motion of the city that the telephone company agreed to keep account of charges in excess of the ordinance rates, and, if they should finally be decided to be illegal, to pay into court the excess sums for distribution among its subscribers. It was the representative of all interests to provide for the creation of the fund; it is properly the representative of all interests to see to its proper distribution. This is a necessary deduction from the cases. It is the universal practice, sustained by authority, that the only mode of judicial relief against unreasonable rates is by suit against the governmental authority which established them or is charged with the duty of enforcing them.  *  *  * "

In the Engelhard case a municipal ordinance of a municipality in the state of Kentucky fixing telephone rates had been challenged. The Supreme Court of the United States holds that the municipality, in being a party to the litigation, is in a sense a trustee for the subscribers, and that it is a proper party to vindicate their rights and cause refunds to be made. As was shown in the original opinion in this case, the state in all proceedings in the way of fixing rates, charges, classifications of traffic, rules, and regulations by the Corporation Commission, to be observed by transmission companies, is a necessary party to such proceedings before said Commission. Every supersedeas bond made to suspend or supersede such order pending its appeal to the Supreme Court is also required to run in the name of the state, and the state is the appellee in all such appellate proceedings, and to our mind the Engelhard case, recently decided by the Supreme Court of the United States, but which was not before this court when the original opinion was written, sustains the former conclusion of this court.

Careful consideration has been given to all appellant's contentions, but, after mature deliberation, we have reached the conclusion that they are without merit. It follows that the petition for rehearing must be denied.

All the Justices concur.