48

[1] C. A. D. 284.

United States Court of Customs and Patent Appeals, May 22, 1944

*Jordan & Klingaman* (*J. L. Klingaman* of counsel) for appellant.
*Paul P. Rao*, Assistant-Attorney General (*Sybil Phillips* and *Alfred A. Taylor*, special attorneys, of counsel) for the United States.

[Oral argument April 5, 1944, by Mr. Klingaman and Mr. Taylor]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges [2]

BLAND, Judge delivered the opinion of the court:

A shipment of mixed cotton rags, a portion of which was paper stock and the remainder wiping rags, was, by the collector of customs at the port of Minneapolis, classified for duty under paragraph 922 of the Tariff Act of 1930 and assessed at 3 cents per pound. The importer filed protest against said action of the collector in assessing the importation at 3 cents per pound, claiming that the merchandise was free of duty under paragraph 1750 of said act. The pertinent portion of the claim in the protest reads as follows:

We claim that these goods are free of duty under the provisions of paragraph 1750 of the Tariff Act of 1930, for reasons that certain waste rags were concealed within each bundle to make ordered weights. Same was not noted by the examiner and we did not discover this until after the expiration of the time limit provided in Sec. 508.

The case was submitted below upon stipulation of counsel, the material portions of which read as follows:

It is hereby stipulated and agreed by and between counsel for the plaintiff and the Assistant Attorney General for the United States that the merchandise covered by the above entitled protest consists of old cotton rags, a part thereof being wiping rags, and another part rags used chiefly for paper making, that these two classes of rags were so packed together that the respective quantity of each could not have been readily ascertained and were not determined at the time of importation by the customs officers, and that the entire importation was assessed for duty at 3 cents per pound under paragraph 922 of the Tariff Act of 1930.

That the rags were not segregated under customs supervision, that no request for such segregation under Section 508 was made.

That subsequently without Government supervision the importer ascertained the amount of rags chiefly used for paper making and found same to be 12,580 pounds, and that for the purpose of this record the Government accepts said finding of the importer as correct.

That the merchandise was imported during the time when the ruling of the Commissioner of Customs, dated June 13, 1933, and published as T. D. 46106 (Abstract 4, 63 T. D. 70), was in effect, and was of the character covered by said ruling.

The United States Customs Court, Second Division, overruled the protest, thereby approving the action of the collector, and from the court's judgment the importer has here appealed.

---

[2] LENROOT, Judge, sat during the argument of this case, but resigned before the opinion was prepared.

The pertinent provisions of the statute involved and also T. D. 46106 relating to "Cotton rags—Japanese wipers," and circular letter No. 942 of the Bureau of Customs addressed to the collectors of customs and others concerned, read as follows:

### Tariff Act of 1930

PAR. 922. Rags, including wiping rags, wholly or in chief value of cotton, except rags chiefly used in paper making, 3 cents per pound.

PAR. 1750. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste (including jute, hemp, and flax waste), shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

### SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

### T. D. 46106

(4) *Cotton rags—Japanese wipers.*—Certain cotton rags of a type known as Japanese wipers contain no mingled quantities of paper stock segregable under section 508 of the tariff act of 1930. Change of practice effective 30 days from the date of the publication of this abstract in the weekly TREASURY DECISIONS. Bureau of Customs circular letter No. 942, dated January 11, 1933. (110428.)

### Bureau of Customs Circular Letter No. 942

*To Collectors of Customs and Others Concerned:*

Reference is made to Bureau of Customs Circular Letter No. 896, of August 10, 1932. Since the date of that letter, the Bureau has continued its investigation of the importation, examination, and classification of cotton rags, with special reference to the class of rags referred to as "Japanese wipers."

The Bureau is now satisfied that "Japanese wipers" consist in their entirety of specially selected, specially processed, and specially packed cotton rags which, in the condition in which they are imported into the United States, differ distinctly from any class of rags chiefly used in this country for paper making.

While it is true that by sorting any importation of "Japanese wipers," the importer may obtain a quantity of rags which, if separately imported, would be unsalable for anything but paper stock, it is found that no such rags have been separately imported, and that the quantities of the imported "Japanese wipers" which find their way into paper making are negligible. The Bureau is accordingly of the opinion that all "Japanese wipers" are properly classifiable as cotton rags not chiefly used for paper making, dutiable at the rate of 3 cents per pound under paragraph 922 of the tariff Act of 1930.

Certain indications have reached the Bureau that some importers of "Japanese wipers" have arranged, or will arrange, with their foreign shippers for a different packing of the goods under consideration than has heretofore been customary in the trade. If an importer requests permission to segregate any importation of

cotton rags under the provisions of section 508 of the Tariff Act, he should be granted the privilege in accordance with the procedure set forth in Circular Letter No. 896, but no segregated rags shall be classified otherwise than under paragraph 922 unless the segregation is completed at the importer's expense within ten days from the date of entry, as provided in section 508 of the Tariff Act and Circular Letter No. 896, and the examiner is satisfied that the segregated portion of the merchandise consists of rags of a kind not ordinarily found in shipments of "Japanese wipers" and, further, of a kind which is chiefly used in the United States for paper making.

In the designation of examination packages from importations of "Japanese wipers," the collector shall designate one bale of each mark or grade in addition to the usual 10%, the extra bales to be delivered to the appraiser's stores under cord and seal, to be held by the appraiser for use as samples for presentation to the Customs Court in the event a protest is filed against the decision of the collector with respect to their classification. When the collector is satisfied that no protest will be filed, the sample bales may be released to the importer. The liquidation of entries covering importations of cotton rags of which full bales are being held as samples should be expedited by collectors and comptrollers in order to eliminate any undue delay in the release of such bales if no protest is filed.

Circular Letter No. 896 is modified to the extent herein indicated, and the last paragraph thereof, requiring monthly reports of the results of segregations of importations of cotton rags, is revoked. In all other respects the instructions therein contained shall continue in full force and effect.

As it appears that the instructions contained in this letter will result in the assessment of greater duties than it has been the established practice to assess when importations of "Japanese wipers" were segregated under section 508 of the Tariff Act, the change of practice shall be made effective only with respect to importations entered or withdrawn for consumption after the expiration of thirty days from the date an abstract of this letter is published in the weekly TREASURY DECISIONS.

(Signed)

F. X. A. EBLE,
*Commissioner of Customs.*

The importer here admits that the same question it seeks to raise here was before this court in the case of *S. Schapiro & Sons* v. *United States*, 29 C. C. P. A. (Customs) 235, C. A. D. 196, wherein the decision was against the present contentions of appellant. The Government contends here, and the trial court held, that the question we are called upon here to decide was decided in the *Schapiro* case, which must now be considered *stare decisis* of the issue here.

This court, in *United States* v. *S. Schapiro & Sons*, 24 C. C. P. A. (Customs) 343, T. D. 48771, held that the decision of the Bureau of Customs, published as a part of T. D. 46106, *supra*, to the effect that certain rags "of a type known as Japanese wipers contain no mingled quantities of paper stock segregable under section 508" was without warrant of law and of no effect. It was further held that "the rights of an importer under the law may not be abridged by a decision of the Bureau of Customs in the form of a general regulation."

The importer here contends that the law does not require, as a condition precedent to obtaining a right granted under a remedial

statute, that it do a vain and idle thing; that during the time when segregation could have been made under the statute, the said Bureau of Customs instruction was in full force and effect and the collector, if segregation had been requested, would have refused segregation upon the theory that the so-called wiping rags contained no paper stock within the meaning of that term in paragraph 922. In this connection the importer relies upon the well-settled principle laid down in *Hills* v. *Exchange Bank*, 105 U. S. 319, and *Supervisors* v. *Stanley*, 105 U. S. 305, as well as in many other decisions, that a tender or offer to perform is waived or becomes unnecessary when it is reasonably certain that the offer will be refused or that payment or performance will not be accepted.

The issue in the *Schapiro* case (29 C. C. P. A.) *supra*, was identical with the issue here. Appellant concedes that the said principle of the *Hills* case, *supra*, and others, was called to the attention of the court in that case; and the court gave the principle consideration there, although it did not specifically name the decisions relied upon by the importer in that case. We there interpreted section 508, *supra* (calling attention to the case of *United States* v. *E. E. Holler*, 28 C. C. P. A. (Customs) 124, C. A. D. 133, which also interpreted the said section) and pointed out that the burden of segregation rests upon the importer, not upon the collector. We there said:

It is urged on behalf of appellants that while T. D. 46106, Abstract 4, was in effect, there was no obligation on the importer either to make segregation under section 508, *supra*, or to offer to segregate.

That contention is based, as we understand it, upon the fact that even if segregation had been made the collector, acting under the instructions from the Commissioner of Customs, would have assessed all the merchandise at 3 cents per pound.

Several authorities were cited in support of the proposition stated in appellants' brief that "There are many situations in law in which the performance of a duty, either contractual or statutory, is dispensed with, and, where performance is dispensed with, it is, of course, unnecessary to offer to perform."

A review of those authorities is not deemed necessary because we do not think that, granting the correctness of the rule, it is applicable here. Whatever the situation with respect to the departmental ruling (and as heretofore recited it was held invalid) the statute—section 508, *supra*—was valid and in effect. Furthermore, as will be seen from the text of circular letter 942, *supra*, importers of rags were not precluded from segregating them while in customs custody. On the contrary, it was stated that they should be granted that privilege. Had appellants requested that procedure in this case and met with a denial, a different question of law would confront us. If the request had been made and granted and the segregation made, apparently the situation would be analogous to that which existed in the *Schapiro & Sons* (cross-appeals) cases, *supra* [24 C. C. P. A.].

We think our decision in the *Schapiro* case from which the above quotation is taken is *stare decisis* of the issue at bar. Certainly that case should be followed unless we are of the opinion that our holding there was clearly erroneous. We are in full accord with the decision

in that case and have no disposition or desire to alter our holding there in any respect.

In the instant case it may be pointed out that there is nothing in the facts which would justify the importer in concluding that if he had requested segregation, it would have been refused on account of the Commissioner's instructions. On the contrary, the instructions clearly required the collector to permit segregation in the event it was requested. Moreover, appellant's protest sets out the fact that during the period when it could have segregated, the waste rags were concealed within each bundle and that "Same was not noted by the examiner and we did not discover this until after the expiration of the time limit provided in Sec. 508." So, it is clear that not only was the importer not prevented from segregating nor did it have good reason to believe that segregation would not have been permitted under section 508 if it had been requested, but that it did not actually request segregation because it did not know anything about the nature of the goods which made segregation necessary.

It might further be added that even if there had been no provision in the Commissioner's instructions requiring the collector to permit segregation if applied for, we think the facts in the instant case can easily be distinguished from the facts in the *Hills* and *Stanley* cases, *supra*. There it had been held by the Court of Appeals of the State of New York that deductions for indebtedness would not be permitted. There, there was a reasonable certainty that the filing of the affidavit would have brought no relief. In the instant case, regardless of the said instructions of the Commissioner of Customs, there was no reasonable certainty that the collector would have failed to follow the statute but would have complied with that portion of the instructions which was clearly null and void.

We might well rest our decision on the foregoing, but we think it proper to say that the commingling statute is mandatory in character. It requires that if goods are so commingled that the quantity or value of each class of such goods cannot be readily ascertained by the customs officer, all the goods shall be dutiable at the highest rate applicable unless the importer segregates, etc. The importer cannot obtain the benefits of the commingling statute without complying with the prerequisite conditions. Moreover, the collector, regardless of the instructions of the Commissioner, is presumed to comply with the law and cannot waive the mandatory provisions of the statute with respect to his duty. The commingling statute is directed to the collector and not to the Commissioner of Customs.

It follows from the foregoing that the United States Customs Court arrived at the proper conclusion in overruling the protest, and its judgment so doing is therefore *affirmed*.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING
JUNE 26, 1944

BLAND, Judge: On the 22d day of May 1944, this court handed down its opinion in the above-entitled cause, affirming the judgment of the trial court overruling appellant's protest.

Appellant, in a petition for rehearing, has called our attention to what it regards as a material misstatement of fact. In order that we may more fully explain the situation with respect to said alleged misstatement of fact and one other statement which is criticized by appellant, and for this purpose only, the petition is granted.

In our former decision we stated the following:

The importer here contends that the law does not require, as a condition precedent to obtaining a right granted under a remedial statute, that it do a vain and idle thing; that during the time when segregation could have been made under the statute, the said Bureau of Customs instruction was in full force and effect and the collector, if segregation had been requested, *would have refused segregation upon the theory that the so-called wiping rags contained no paper stock within the meaning of that term in paragraph 922.* * * * [Italics added here.]

It is the above-quoted italicized portion to which appellant takes exception, contending that it has never argued that its right to segregation would have been refused, but that regardless of this fact, owing to the instruction of the Bureau of Customs, no relief in the premises would have been afforded.

While there is no contention here that appellant would have been refused segregation, we can see no more reason for the collector to refuse segregation than for him to refuse the remedy here sought by appellant if segregation had been requested, performed, and, while in customs custody, the correct amount of dutiable and nondutiable merchandise ascertained. Appellant's petition is therefore without merit. Whether it is argued that segregation would have been refused because it had already been determined that there was nothing segregable in the shipment, or whether it is argued that the remedy would not be applied for the same reason would all seem to amount to the same thing.

It is perhaps trite to say that in customs jurisprudence it is elementary and fundamental that an importer, to obtain relief in a case of this character, must, prior to protest, comply with the prerequisite statutory requirements, and that proof of the quantity of dutiable and nondutiable merchandise in segregation cases is of no avail when made upon facts ascertained outside of the jurisdiction of customs officials and when the mandate of the statute with respect thereto has been ignored.

Appellant knew, or was chargeable with knowledge, that it had the right, under the statute and under the instruction of the Commissioner of Customs, to segregate the goods under customs supervision, and

that if it was there determined that a certain portion of the same was nondutiable and the collector erroneously assessed that portion as dutiable, it would have the right to protest and obtain its rights. Appellant did not ask for segregation, which it had the right to do. Its protest was filed without complying with the statutory prerequisite. Its proof made concerning segregation outside of customs supervision, under such circumstances as are at bar, was of no avail, as was held by the trial court.

Embraced in appellant's second complaint in its petition for rehearing is the question relating to the court's statement that "there was no reasonable certainty that the collector would have failed to follow the statute but would have complied with that portion of the instructions which was clearly null and void." On this subject, it is sufficient to say that in the case of *United States* v. *S. Schapiro & Sons*, 24 C. C. P. A. (Customs) 343, T. D. 48771, the portion of the regulation of the Bureau of Customs which this court held to be without warrant of law and of no effect was that portion which sought to classify the merchandise before it was imported, and was embraced in the statement that "Japanese wipers contain no mingled quantities of paper stock segregable under section 508 of the tariff act of 1930." From the instruction itself, it appears that, notwithstanding this statement, provision was made for segregation if requested by the importer, and the following quoted language covers the subject:

* * *. If an importer requests permission to segregate any importation of cotton rags under the provisions of section 508 of the Tariff Act, he should be granted the privilege in accordance with the procedure set forth in Circular Letter No. 896, but no segregated rags shall be classified otherwise than under paragraph 922 unless the segregation is completed at the importer's expense within ten days from the date of entry, as provided in section 508 of the Tariff Act and Circular Letter No. 896, and the examiner is satisfied that the segregated portion of the merchandise consists of rags of a kind not ordinarily found in shipments of "Japanese wipers" and, further, of a kind which is chiefly used in the United States for paper making.

It is thus seen that although the Treasury Department had, without warrant of law, by the use of the above-quoted language, declared that Japanese wipers contained no nondutiable rags, the collector, notwithstanding this fact, if the rags had been segregated and the examiner was satisfied that a segregated portion of the merchandise consisted of paper stock, was privileged under the instruction to grant relief. The court at no time, by the use of the language complained of, intended to say or did say that the collector was privileged to ignore the instructions of the Secretary of the Treasury relative to the execution and administration of the revenue laws.

With the above correction of the statement of facts relating to appellant's contentions, we adhere to our former decision.